No. 37,123

LUTHER M. CARPENTER, *Appellant*, v. FRANK F. GILLARD, *Appellee.*

(204 P. 2d 595)

Opinion.filed April 9, 1949.

*Paul R. Kitch*, of Wichita, argued the cause, and *Howard T: Fleeson, Homer V. Gooing, Wayne Coulson, Dale M. Stucky*, all of Wichita, *O. C. Mosman, Clay C. Rogers, C. Jasper Bell, Lyman Field, Reed O. Gentry* and *Joseph J. Kelly, Jr.*, all of Kansas City, Mo., were with him on the briefs for the appellant.

*William Tinker*, of Wichita, argued the cause, and *Getto McDonald, Arthur W. Skaer* and *Hugh P. Quinn*, all of Wichita, were with him.on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action for damages alleged to have been sustained when plaintiff was struck by an automobile driven by one of defendants. Judgment was for defendant. Plaintiff appeals.

The petition alleged that plaintiff was traveling south in his automobile being driven by his daughter about 3 a. m., on U. S. Highway 69 a few miles north of Pittsburg, and that while his automobile was parked a few feet west of the highway he was standing behind it and defendant Gillard negligently ran his car off the highway and onto its shoulder and against plaintiff, crushing him against his own automobile, and injuring him. The petition set out the negligence of defendant as failing to keep a lookout, excessive speed, failing to apply brakes, swerving from the paved portion of the highway, failing to sound signal of his approach, failing to keep his automobile under proper control and failing to operate his automobile at such speed as would enable him to bring it to a stop within the distance of his range of vision. The plaintiff was injured and prayed judgment in the amount of $40,000. The defendant Kansas Gas and Electric Company answered with a general denial and especially a denial that at the time of the collision Gillard was acting as its agent. No effort was made by plaintiff to prove such agency and that defendant dropped out of the case.

Defendant Gillard answered first with a general denial and specifically a denial that he was negligent. The answer further alleged

that the plaintiff was guilty of contributory negligence in that he had driven his car along a slippery highway, it had slid from the highway partially into the ditch, and while plaintiff was endeavoring to extricate it plaintiff was standing behind his automobile and as the car driven by defendant approached, the plaintiff saw it or by the exercise of reasonable diligence could have seen it and should have known that defendant's car would slip off the highway at the point where plaintiff was standing and the plaintiff knowing this stood with his back to the approaching car driven by defendant and took no precaution for his own safety although cautioned by other persons until the car driven by defendant slipped and slid off the highway at the exact location from where plaintiff's car had slid.

The reply was a general denial.

The jury returned a general verdict for defendant and answered special questions, as follows:

"1. Do you find that there was anything to keep the plaintiff from seeing the approach of the defendant's car?  A. No.

"2. At what speed do you find the defendant was operating his car up to a point about 300 feet from the point of the collision?  A. Around 25 miles.

"3. Do you find that beginning at a point about 300 feet from the point of collision that the defendant slackened his speed and continued to slacken his speed up to the time of the collision?  A. Yes.

"4. Do you find that the defendant's car after reaching a point about 20 to 30 feet north and northeast of plaintiff's car skidded on the pavement?  A. Yes.

"5. If you answer question No. 4 in the affirmative, state what if anything the defendant could have done that he did not do to keep the car from skidding into plaintiff's car.  A. Nothing.

"6. If you find for the plaintiff and against the defendant, set forth fully the acts of negligence of which you find the defendant was guilty.  A. . . . . . . . . . . . . . . ."

No motion was filed by the plaintiff to strike out the answers to any of these questions.  Plaintiff filed a motion for a new trial on the grounds of abuse of discretion by the trial court, misconduct of the jury and of the defendant, erroneous rulings and instructions, that the verdict was given under the influence of passion and prejudice of the jury, verdict contrary to the evidence, newly discovered evidence and verdict procured by corruption.  At the hearing of the motion for a new trial plaintiff proffered proof as to the conduct of the jury during its deliberations.  Some of this proffered evidence was admitted and some was not.  The motion was overruled.

Plaintiff's specifications of error are that the court erred in overruling his motion for a new trial and in sustaining defendant's objection to certain testimony proffered by him at the hearing of the motion for a new trial. Because the point most stressed by plaintiff has to do with evidence we shall notice that briefly now. Plaintiff testified he was riding south on a paved state highway sometime after midnight. It had been snowing and the pavement was covered with snow and ice. His daughter was driving. Two or three other people were with them. They saw a car in the ditch on the east side of the road. At plaintiff's direction his daughter drove their car off the pavement on the west side. All the occupants of plaintiff's car got out and pushed the car on the east side out of the ditch and its driver drove on down the road. When the plaintiff's party got back in his car and his daughter attempted to proceed the wheels spun and she could not get it under way. They all got out and pushed but the car only slipped farther west toward the ditch. The story told by plaintiff from there on is that he went to the trunk in the rear of his car, opened it and took out a chain; that he was about three or three and one-half feet from the pavement facing south, talking to a companion, when his companion called out "Look out"; that he stepped over to the edge of the shoulder and had no more than taken a second step when defendant's car hit him and caught him between the bumpers, breaking his leg. The lights were all on in plaintiff's car. He did not notice the approach of the car until his companion called out "Here comes a car." Other evidence furnished by the plaintiff put his car clear off the paved portion of the highway, facing somewhat in a southwesterly direction, that is, the front end of plaintiff's car was a little bit farther west than the rear end, according to this testimony. All his evidence, however, was to the effect that the car was entirely off the pavement.

On account of the argument of plaintiff it will be necessary to take note of the evidence furnished by defendant. He testified that he saw plaintiff's car while he was three hundred feet north of it, he was going about twenty or twenty-five miles an hour and it looked like plaintiff's car was at right angles to the highway; that he immediately slowed down and continued to drive slow toward the south. He met a car coming from the south when he was about one hundred feet north of plaintiff's car. He passed it on the right and continued on south. He testified that when he was

within fifty feet of the plaintiff's car he saw he could not get around it, so he turned to the east to keep from hitting it broadside. His car was skidding. His car went to the east three or four feet and then collided with plaintiff's car. The wheels of the car he hit were on the shoulder but he would say the rear was over the highway. He testified further:

"I tried to keep the car from skidding. I tried to hold it in a straight line. I had had my brakes on slightly. I must have applied them a little more quickly and turned to the left. I was going about five miles an hour just before the collision occurred and I was still going that speed at the time of the collision.

"Q. Were you at that time under the influence of liquor? A. I must— would say no."

On cross-examination he testified, in part, as follows:

"It looked like the Carpenter car was off the highway. The pavement was standard width—I would say around 18 feet wide. I had 18 feet of pavement to travel on going across the road. I did not go across the road until I was around 20 or 30 feet north of the Carpenter car. When I got within 20 feet of the Carpenter car I had a clear highway without an obstruction of any kind other than the Carpenter car. The rear of the Carpenter car was overhanging onto the pavement approximately two feet. I don't know where Mr. Carpenter was standing because I never saw him."

There was no testimony by any witness that defendant blew his horn or gave any other warning of his approach.

We thus have a story from the lips of defendant himself that he drove down the highway for three hundred feet with the plaintiff's car in plain view all the time, the last fifty feet at about five miles an hour, and aware that he had lost or was losing control of his car, without giving any signal or warning whatever of his approach.

Plaintiff first quotes three instructions given the jury and points out there was no objection to them and they became the law of the case. These instructions were as follows:

"INSTRUCTION 15

"In bad weather, when visability is below normal or the highway is wet or slippery so as to constitute a traffic hazard, a motorist is held to a higher degree of care than when the weather is clear and the highway dry.

"Under such conditions the operator of a motor vehicle would be held to a higher degree of care in driving on the highway and observing the highway ahead, to be on the alert for other traffic or objects or obstructions on the highway, and this rule of law is particularly applicable when meeting or passing other vehicles or other objects on the highway, and under such conditions a driver should keep his vehicle under control and travel at such speed as to be able to avoid collision with another vehicle or other objects on the highway.

"INSTRUCTION 16

"You are instructed that a motorist driving an automobile upon the highway must have it properly equipped with brakes and lights so that while driving upon the highway he may correlate his speed with vision and be able to stop, turn out, or otherwise avoid collision with objects upon the highway within his range of vision. Failure to do so constitutes negligence as a matter of law.

"INSTRUCTION 17

"You are instructed that it is the duty of a driver of an automobile traveling at night to have such a headlight as will enable him to see in advance the face of the highway and to discover obstacles in his path in time for his own safety, and to keep such control of his car as will enable him to stop and avoid colliding with obstructions that fall within his vision."

It will be noted these instructions first deal with the higher degree of care to which a driver on a slippery highway is held, then the duty of a motorist to have his car properly equipped with brakes and lights and his duty to correlate his speed with his vision so as to be able to stop or turn or otherwise avoid the collision. It is noted the trial court told the jury that failure to do those things was negligence as a matter of law. Then the last instruction dealt with the duty of a driver as to headlights and control of his car generally. It may be stated in passing that these instructions were clearly favorable to plaintiff's theory of the case. They were given pursuant to our holdings in many cases. (See *Eldredge v. Sargent*, 150 Kan. 824, 96 P. 2d 870; also *Wright v. Nat'l Mutual Cas. Co.*, 155 Kan. 728, 129 P. 2d 271; also *Harrison v. Travelers Mutual Cas. Co.*, 156 Kan. 492, 134 P. 2d 681 and many others.) Plaintiff then argues that the uncontradicted evidence shows that defendant negligently failed to apply his brakes in time to bring his vehicle to a halt before striking the plaintiff, swerved from the paved portion of the highway, failed to sound a warning of his approach, failed to keep his vehicle under proper control and failed to operate his automobile at such speed as to enable it to stop within the distance of the range of vision provided by his headlights.

He argues from the above that the defendant was guilty of negligence as a matter of law and the special finding of the jury in answer to question number 5, as well as the general verdict, should be set aside and a new trial ordered.

We will examine this question from the standpoint of whether plaintiff should be granted a new trial because the verdict was contrary to the evidence.

In the first place, the uncontradicted evidence is that defendant

saw plaintiff's car in distress when he was three hundred feet away, so there was no question about headlights. From then on according to evidence furnished by him he proceeded first at a speed of twenty to twenty-five miles an hour, which he had reduced to five miles an hour just before the collision. So there is no question about the speed. Under the evidence the jury was warranted in believing that when defendant was about one hundred feet from plaintiff's car he met a car coming from the opposite direction and was forced over to the right side of the highway, the side on which plaintiff's car was. His story from there on is that he tried to get back to the east so that he could pass plaintiff's car as it projected over the highway but the highway was so slippery that he was not able to do so and his car skidded into that of plaintiff. There was substantial evidence from which the jury would be warranted in concluding that the collision was actually caused by defendant's car skidding on the slippery highway. Such is a hazard common to all travelers on a paved road covered with snow and ice. It was a situation where reasonable men might differ as to whether the conduct of plaintiff was that of an ordinary, reasonable man under all the circumstances—hence a jury question. Such is not true, however, as to the failure to sound a warning. Defendant does not even claim that he gave plaintiff any warning of his approach.

Taking all the surrounding facts and circumstances into consideration we hold that the failure of defendant to sound any warning constituted such negligence that defendant cannot be said to be absolved therefrom by the finding for defendant. The answer to question No. 5 was upon only one of the grounds of negligence pleaded in the petition.

At the conclusion of defendant's evidence the plaintiff demurred to it on the ground that there was no evidence to base an instruction to the jury on the specific charges of contributory negligence made in his answer. This demurrer was overruled. Attention is called to this demurrer because of what happened later.

The trial court proceeded to instruct the jury. Amongst these instructions were the following:

"INSTRUCTION 7

"Plaintiff's claim in this case is based upon the alleged negligence of the defendant.

" 'Negligence' is defined as the failure to observe for the protection of another person that degree of care, precaution and vigilance which circumstances would justly demand.

" 'Ordinary negligence' is the lack of ordinary care.

" 'Ordinary care' is that degree of care and precaution that a person of ordinary prudence is accustomed to use under like or similar circumstances.

"Negligence must be established as the proximate cause of the injury or damage complained of, if any is shown, before the party charged with negligence can be held liable for the damage.

" 'Proximate cause' is an act or omission which naturally leads to and is directly instrumental in producing a given result.

"Before it can be established as the proximate cause of injury or damage, negligence must be such that a person of ordinary caution and prudence should have foreseen that some injury or damage would probably arise from the existing negligence and could have been reasonably expected, although the specific injury or damage need not have been foreseen.

" 'Contributory negligence' is the lack of ordinary care on the part of the person injured or damaged by the actionable negligence of another, contributing to the injury or damage, or the proximate cause thereof, without which the injury or damage would not have occurred. Contributory negligence, if established, is a bar to recovery. That is, if you find that the plaintiff was injured or damaged by the negligence of the defendant, and you further find that the plaintiff was also guilty of negligent acts which, combined with the negligence of the defendant, contributed to plaintiff's injury or damage, and that plaintiff's own negligence was the proximate cause of the injury or damage, and that without plaintiff's own negligence the injury or damage would not have occurred, then that would constitute contributory negligence on the part of the plaintiff and plaintiff could not recover against the defendant.

"The burden of proof is upon the defendant to prove the defendant's allegation of plaintiff's contributory negligence by a preponderance or greater weight of the evidence, unless plaintiff's own evidence has shown that he was guilty of contributory negligence, as otherwise herein instructed.

"INSTRUCTION 13

"You are instructed that if you believe from the evidence that at the time, place and under the circumstances of his injuries, plaintiff exercised ordinary care—that is, such care as an ordinarily prudent person would exercise under like circumstances—then he was not guilty of contributory negligence, and you would not be warranted in finding against the plaintiff on that ground.

"The burden of proof is on the defendant to show by the greater weight of all the evidence that the plaintiff was not exercising ordinary care and that such failure to exercise ordinary care directly contributed to his injuries and, unless the defendant has so proved such facts, you cannot find for the defendant on the defense of contributory negligence."

Also note the following:

"INSTRUCTION 10

"The defendant claims that the plaintiff failed to exercise ordinary care for his own safety just prior to the accident, and in this connection you are instructed that if you find by a preponderance of the evidence that the plaintiff

could have, by the exercise of ordinary care, moved to a position of safety so that he would not have received any injury, then your verdict must be for the defendant."

It will be noted that instruction No. 1 set out the issues made in the pleadings, especially the allegation in the answer as to contributory negligence. Instruction No. 7 dealt in part with contributory negligence on the part of plaintiff and the question of contributory negligence should not have been submitted to the jury. Defendant argues here that plaintiff cannot be heard to complain of these instructions here because he did not object to them in the trial court. Plaintiff did, in the demurrer just referred to, call the trial court's attention to the fact that defendant had not proved any of the allegations of contributory negligence on the part of plaintiff. In view of that demurrer it can hardly be said that the instructions on contributory negligence were given without objection. Instruction No. 10 was objected to by plaintiff.

It placed on plaintiff the duty of moving out of the way after his companions had warned him. There was no duty on him to keep a lookout for the approach of a car.

It was error under all the facts and circumstances to give that instruction.

On the hearing of the motion for a new trial plaintiff offered to prove by one of the jurors that after the jury retired she expressed an opinion to the other jurors that plaintiff had been drinking. This was objected to because it was an attempt to impeach the verdict. The objection was sustained and thereupon counsel for defendant stated "whether she said it or not didn't make any difference, I argued for thirty minutes that he had been." The court did not permit any further inquiry tending to impeach the verdict. We are not concerned with that here. We are concerned with the fact that there was no evidence at all in the record and for counsel to argue for thirty minutes or even five minutes that he had been was misconduct and under the circumstances prejudicial to the plaintiff.

On account of the errors noted, some of them trivial and some not, called to the attention of the trial court, the plaintiff was denied a fair trial.

The judgment of the trial court is reversed with directions to award plaintiff a new trial.

THIELE, J. (dissenting): In my opinion a correct disposition has

not been made of this appeal. The jury returned a general verdict in favor of the defendant and answered special questions consistent with that general verdict, and the trial court after hearing the motion for a new trial and denying it approved that verdict and rendered judgment on it. Under general rules of appellate practice that judgment is to be construed favorably to the prevailing party and not against him. As I see it, that rule is reversed here and in the court's opinion the evidence is construed against the defendant although the jury determined the issues in his favor. That the verdict and judgment are supported by the evidence is not disputed. The whole approach of the opinion is that there was evidence warranting a different result and generally the facts are so stated. In order to avoid the verdict and judgment certain claimed trial errors are determined to be prejudicially erroneous.

It is said that argument of defendants' counsel to the jury constituted misconduct and was prejudicial to the plaintiff. This is reflected in paragraph 5 of the syllabus and the corresponding part of the opinion. What is there said ignores the record and as I see it is contrary to it. The record discloses that while there was some testimony that plaintiff had not been drinking, one Brenner who helped take plaintiff Carpenter to the hospital after the accident, testified that he got in the back seat of an automobile and held Carpenter's head and that he smelled intoxicating liquor and he was further asked the question, "And state whether or not in your opinion he had been drinking intoxicating liquor" and answered, "He had the smell of alcohol." No objection was made to this testimony when it was given. No objection was made to the argument of counsel to the jury when it was being made. The matter was not specifically mentioned in the motion for a new trial. The argument referred to had a basis in the record and the belated attempt to show that the jury considered the matter is not entitled to the weight this court gives it. In any event it had nothing to do with the primary question, was defendant guilty of negligence, a question the jury resolved in his favor.

Considerable space is also given to claimed error in an instruction pertaining to plaintiff's contributory negligence. In view of the jury's finding that the defendant was not guilty of negligence it became immaterial whether or not plaintiff was guilty of negligence. Assuming, however, it was material, it is not sound practice to isolate one instruction and weigh it without regard to others covering the same subject matter. See decisions noted in West's

Kansas Digest, Trial, § 295, and Hatcher's Kansas Digest, Trial, § 186, and Appeal and Error, § 483. No objection was made to instructions defining negligence and contributory negligence and those setting forth the duties incumbent on both plaintiff and defendant. Only instruction 10 was objected to. When read in connection with the other instructions it is difficult to see in what respect it was prejudicially erroneous, if in fact erroneous. In any event, however, there is nothing in the record to indicate the instruction prejudiced the jury with respect to its specific finding that the *defendant* was not negligent. Absent a sound basis for setting aside that specific finding in favor of the defendant the general verdict and judgment cannot be overthrown.

In my opinion well-established rules of appellate practice indicate that the judgment of the trial court should be affirmed.

WEDELL and PRICE, JJ., concur in the dissent.