MORRISON v. DEMOGALA.

1. AUTOMOBILES—SPEED—NEGLIGENCE.

A motorist must so drive his car that he can and will discover an object, perform the manual acts necessary to stop and bring his car to a complete stop within the range of his vision and the assured clear distance ahead, on peril of legal negligence (P.A. 1949, No 300, § 627).

2. SAME—SPEED—ICY PAVEMENT.

A motorist is not to be excused from the consequences of negligence in driving too fast by reason of the icy condition of the paved highway at the scene of the collision at 1:20 a.m. early in December in the Upper Peninsula, where it appears he had driven over the same road within 2 hours before the accident (P.A 1949, No 300, § 627).

3. SAME—SPEED—NIGHTTIME—ICY PAVEMENT—NEGLIGENCE.

Defendant motorist was properly held guilty of negligence as a matter of law, where he drove his car so fast on paved highway in the Upper Peninsula covered with icy spots that he was unable to stop his car at 1:20 a.m. early in December in time to avoid collision with plaintiff and his car which had become involved in a previous accident with a third car some time after the 2 cars had come to rest (P.A 1949, No 300, § 627).

4. SAME—INSTRUCTIONS—SUBSEQUENT NEGLIGENCE—SPEED—NIGHTTIME.

Court was not in error in charging jury they need not take into consideration whether or not plaintiff had been at fault in prior collision between his car and that of a third person where such cars had become so interlocked they could not be driven and were astride the center line of the pavement at 1:20 a.m.

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 5 Am Jur, Automobiles §§ 166 et seq., 263.
[1-3] When automobile is under control. 28 ALR 952.
Driving automobile at speed which prevents stopping within range of vision as negligence. 87 ALR 900; 97 ALR 546.
Reciprocal duties of drivers of automobiles or other vehicles proceeding in the same direction. 24 ALR 507; 47 ALR 703; 62 ALR 970; 104 ALR 485.

early in December, since defendant motorist was guilty of subsequent negligence as a matter of law in so driving his car as to be unable to stop it within the assured clear distance ahead (PA 1949, No 300, § 627).

5. Same—Instructions—Contributory Negligence—Question for Jury.

Instruction, when taken as a whole, *held*, proper, where it left question to jury as to whether or not plaintiff did what might have been expected of him for his own safety by standing near his car after it had been run into and interlocked with a third party's car while defendant was seen approaching some quarter of a mile away at 1:20 a.m. as the interlocked cars remained astride the center line of pavement that was icy in spots.

6. Appeal and Error—Improper Question—Insinuation of Falsi-fication.

Trial judge's holding that question "Are you just as sure of that as you are of anything you said here?" as put to witness was improper and requesting attorney for defendant to get the answer from the witness and not insinuate witness was fal-sifying *held*, not reversible error.

Appeal from Alger; Runnels (Herbert W.), J. Submitted January 14, 1953. (Docket No. 58, Calendar No. 45,707.) Decided April 13, 1953.

Case by Otto A. Morrison against Theodore Demogala for damages sustained when he was hit by defendant's automobile. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Herbert, Wood & Hood,* for plaintiff.

*R. W. Nebel* and *Alexander, Cholette, Buchanan, Perkins & Conklin* (*Edward D. Wells,* of counsel), for defendant.

Reid, J. Plaintiff brought this suit to recover damages for personal injuries and loss of property caused by defendant's automobile, while driven by defendant, striking plaintiff and his automobile on

a public highway. From a verdict and judgment had thereon for plaintiff, defendant appeals.

The accident occurred December 4, 1949, about 1:20 a.m. at the extreme westerly edge of the city of Munising on State trunk line highway M–28. Plaintiff Morrison claims that, with his wife and Mr. and Mrs. Van Dorn as passengers, he had driven his car from downtown Munising to the point of collision and, intending to let the Van Dorns out at the residence of Mrs. Van Dorn's parents, Mr. and Mrs. Perry, had slowed his car and pulled slightly over onto the berm on the north side of M–28, intending to make a left turn across the highway and drive onto the next driveway 15 or 20 feet west of the Perry residence on the south side of M–28, and was proceeding at about 2 miles per hour, with his car about parallel to M–28 when his car was struck in the rear end by Roy DeLisle's car driven by DeLisle. DeLisle, a witness for defendant, testified, "He [plaintiff] drew over to the side of the road preparatory to making a left turn. And I slid into the rear end of his pickup," which collision is not the basis of plaintiff's claim.

Plaintiff testified:

"My truck or car was  *  *  *  [struck] mostly in the left rear by the DeLisle car. As a result of that impact it drove the [*i.e.*, plaintiff's] car crossways of the road.  *  *  *  Most of my car was over the center line [and] on the south side; the rear wheels of my car were to the north of the center line. The DeLisle car was hooked in the left rear bumper of my car and that [*i.e.*, DeLisle's] car was very close to the center line, extended northward on the north side of the center line. Pretty well all of the DeLisle car was to the north of the center line, facing mostly east and west."

After the 2 cars came to a rest, they were found to be so interlocked that they could not be driven.

Plaintiff, his wife and the Van Dorns got out of plaintiff's car. Mrs. Morrison and Mrs. Van Dorn walked in front of the plaintiff's truck or car and were told by Mr. Van Dorn to go to the Perry residence. Plaintiff testified that he went to the DeLisle car to see whether any one in that car was injured, and then plaintiff saw the headlights of defendant's car coming more than 400 feet, and in fact, about 1/4 mile away. Plaintiff shouted to Van Dorn to go up the road and flag the oncoming car. Van Dorn took off on a run waving his arms and shouting, for about 75 feet in a westerly direction from the point of collision. Defendant's car did not slacken speed. Plaintiff was standing on the pavement on the west side of his car. Van Dorn turned and ran back toward the point of collision, looking by times over his shoulder and when Van Dorn had returned to a point about 30 feet from the point of collision, plaintiff shouted to him, "Jump," and Van Dorn jumped for the bank of snow that had been plowed from the pavement by a snow plow. Defendant drove his car into the same snow bank on the northerly side of M–28, the front end of his car stopped in the snow bank, the rear end swung around southerly and pinned plaintiff between the right rear fender of defendant's car and the right side of plaintiff's truck. Plaintiff had remained about the middle of the highway. Plaintiff testified that he did not move to one side or the other while defendant's car was coming, because at that time Van Dorn's life was in danger of which danger plaintiff warned him, and that there was no way by which plaintiff could tell just where defendant's car was going, whether to cross the road or go behind the truck, or what other direction it would take. Plaintiff further testified that about 300 feet westerly from the scene of the accident, there was a road sign limiting speed to 25

miles per hour, and that visibility at the time in question was very clear.

Defendant had driven over the place of the accident within 2 hours before the accident with his wife in the car with him, going west as far as Au Train. Defendant claims that as he was returning he first saw a couple of people standing on the southerly side of the road, at the place of the accident, about 90 or 100 feet away; that he tried his brakes, found the road slippery, put on his brakes a couple of times, blew his horn and cut across the road and went over the snow bank a little ways but did not hit the guard rail, slid 10 or 12 feet; that he saw Van Dorn just as he jumped the fence which was possibly 10 or 12 feet ahead of defendant. From all of defendant's testimony, it is clear that defendant could not stop his car without collision, after he first saw obstructions in the road at the point of collision. Defendant's answer states:

"A portion of said highway had snow and ice on same at the point of collision and at other points on said highway both east and west of said point."

Our statute, PA 1949, No 300, § 627 (CL 1948, § 257.627 [Stat Ann 1952 Rev § 9.2327]), provides, in part, as follows:

"No person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured, clear distance ahead."

Without making express reference to any provision of a statute, we say, in *Ruth* v. *Vroom,* 245 Mich 88, 91 (62 ALR 1528):

"It is not enough that a driver be able to begin to stop within the range of his vision, or that he use diligence to stop after discerning an object. The rule makes no allowance for delay in action. He must, on peril of legal negligence, so drive that he

can and will discover an object, perform the manual acts necessary to stop, and bring the car to a complete halt within such range." ·

Defendant is not to be excused from the consequences of negligence by his testimony as to the icy condition of the highway at the scene of the collision. He had driven over the same road within 2 hours before the accident; the statement of his answer, hereinbefore quoted, makes clear that he was required and warned by the general condition of the road, to be on the lookout for icy spots.

Defendant was clearly negligent as a matter of law in driving his automobile at such speed and under the then existing circumstances known to him, that he could not stop within the assured clear distance ahead.

The court was without error in charging the jury in effect that defendant was as a matter of law, guilty of negligence.

In *Sutter* v. *Pere Marquette R. Co.*, 230 Mich 489, there was a dispute in the testimony as to whether the plaintiff's truck was stalled on a street crossing of defendant's tracks before the train came around a curve and whether the engineer in consequence was guilty of subsequent negligence. The jury's verdict implied a finding that the truck was stalled at the crossing before the engineer arrived at the curve one-half mile distant from the crossing, and the further finding that the engineer could have stopped the train after he first had an opportunity to see the plaintiff's truck stalled on the crossing, and thus have avoided the collision. We upheld the verdict by application of the doctrine of subsequent negligence. In that case, it was necessary to submit the disputed question of fact to the jury. In the instant case, the undisputed facts clearly show defendant's negligence and that his negligent acts occurred subsequent to the negligence, if any, of plaintiff and plaintiff's

negligence, if any, had entirely ceased. Hence, the court was without error in charging the jury that they need not determine and should not take into consideration the question whether plaintiff's car and DeLisle's car.

Defendant complains of the following from the charge to the jury:

"I charge you that it is not negligence as a matter of law for Mr. Morrison following the collision between the DeLisle and the Morrison cars to remain on the highway for the purpose of warning oncoming traffic. Indeed under some circumstances there may be a positive duty to so warn traffic, and it is for you to say whether or not Mr. Morrison under the particular circumstances shown in this case did what a reasonably prudent man would have done under like circumstances."

Defendant claims that this instruction assumes, as an undisputed fact, that plaintiff remained on the highway to warn oncoming traffic. We think it clear that the court left the question as to why plaintiff remained on the highway, to the jury as a question of fact. Especially is such meaning of the charge apparent when the entire quotation is read, and following the quoted excerpt considerable amount of instruction was given on the subject of what a person may be expected to do for his own safety, when called upon to act suddenly. We find no reversible error in this particular.

While Mrs. Morrison was testifying on cross-examination by Mr. Nebel, attorney for defendant, the following occured: Witness testified that a Mrs. Nedzinski,

"came over and sat at our table [*i.e.*, at Baij's tavern]. She ordered pop. I drank one glass of beer

with her. He [apparently referring to plaintiff] drank one glass of beer.

"*Q*. Are you just as sure of that as you are of anything you said here?

"*The Court:* I think that is an improper question. She is under oath and she is telling if there is anything, you are about the only attorney asks that.

"*Mr. Nebel:* I think I am within my rights.

"*The Court:* Go ahead, get the answer from the witness. Don't make any insinuations."

Defendant takes exception to the foregoing rulings by the court and claims prejudicial error. The cross-examiner had not taken pains to inquire of Mrs. Morrison whether "he," *i.e.,* plaintiff, had any other glass or glasses of beer, and yet defendant's complaint is based on the proposition that the statement of witness, "He drank one glass of beer," is contradictory of testimony already given by plaintiff as to other glasses of beer which he drank. The cross-examiner evidently wanted the jury to understand that he considered *"one* glass of beer" (italics supplied) a misstatement. It is further to be noted that the "one glass of beer" seems to refer to a period when Mrs. Nedzinski was at the same table, and not to any imbibing by plaintiff when Mrs. Nedzinski was not present or at the same table. The insinuation of purposeful falsehood implied in the question, "Are you just as sure of that as you are of anything you said here?" was uncalled for and out of place, hence, the court was justified in evidently concluding that the question was only meant to embarrass the witness or as an argument to the jury in the ostensible form of cross-examination, insinuating that the witness was falsifying.

Under all the circumstances, we consider it best to leave the ruling where the trial judge left it, and do not find reversible error.

Defendant does not claim on this appeal that the verdict is excessive. Judgment affirmed. Costs to plaintiff.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, BUSH-NELL, SHARPE, and BOYLES, JJ., concurred.