HUGHES v POLK

OPINION OF THE COURT

1. AUTOMOBILES—WITNESSES—IMPEACHMENT—DRIVING RECORD.

A plaintiff in an automobile negligence case may cross-examine the defendant regarding his traffic convictions for purposes of impeachment where the credibility of the defendant's testimony as to his exercise of due care is at issue.

2. AUTOMOBILES—SUDDEN EMERGENCY.

The trial court, in an automobile negligence case, should not have given an instruction that a sudden emergency would excuse defendant's negligence where defendant could have had a clear view of the plaintiff's car for 300 feet and where the defendant was aware of the snow on the ground and thus could expect icy conditions.

3. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—RESCUE—INSTRUCTIONS TO JURY.

An appropriate rescue doctrine instruction is that one who goes to the rescue of a person who is in imminent and serious peril caused by the negligence of another is not contributorily negligent, so long as the rescue attempt is not recklessly or rashly made.

4. NEGLIGENCE—RESCUE—INSTRUCTIONS TO JURY.

An instruction on the rescue doctrine should be given in an appropriate case when requested, even though there is no instruction on the rescue doctrine in the standard jury instructions, because additional instructions should be given where the standard jury instructions are inadequate or incomplete.

CONCURRENCE BY J. H. GILLIS, J.

5. AUTOMOBILES—WITNESSES—IMPEACHMENT—DRIVING RECORD.

*A defendant in an automobile negligence case should not be subject to impeachment by use of his driving record.*

REFERENCES FOR POINTS IN HEADNOTES

[1, 5–7] 7 Am Jur 2d, Automobile and Highway Traffic § 125 *et seq.*
[2, 8] 8 Am Jur 2d, Automobile and Highway Traffic § 1030.
[3, 4] 7 Am Jur 2d, Automobile and Highway Traffic § 380.

6. AUTOMOBILES—WITNESSES—IMPEACHMENT—DRIVING RECORD.

A mere allegation in the complaint in an automobile negligence
case that the defendant was negligent at some time or place
and the denial of the allegation in a responsive pleading does
not permit impeachment of the defendant by introduction of
his driving record.

7. AUTOMOBILES—WITNESSES—IMPEACHMENT—DRIVING RECORD.

Limiting cross-examination as to defendant's driving record for
purposes of impeachment was in the trial court's discretion
where the only foundation for the cross-examination was de-
fendant's comment that he considered himself a safe driver,
because a poor driving record is unlikely to change the defend-
ant's evaluation of himself.

8. AUTOMOBILES—SUDDEN EMERGENCY.

A sudden emergency exists where a defendant driver's car strikes
a patch of glazed ice, different in kind from the rest of the
surface of the road, even though the existence of snow on the
road was known to the defendant.

Appeal from Washtenaw, William F. Ager, Jr.,
J. Submitted Division 2 February 29, 1972, at
Lansing. (Docket No. 10568.) Decided May 24,
1972. Leave to appeal denied, 388 Mich 770.

Complaint by Mary Hughes and Mary B. Rowe
against Gerald Polk for damage caused by defend-
ant's negligent operation of an automobile. Judg-
ment for defendant. Plaintiffs appeal. Reversed
and remanded.

*Hooper, Hathaway, Fichere, Price & Davis,* for
plaintiffs.

*Douvan, Harrington & Carpenter,* for defendant.

Before: McGregor, P. J., and J. H. Gillis and O'Hara,* JJ.

McGregor, P. J. This is an automobile negligence case. The salient facts are as follows: Plaintiff Mary Beth Rowe is the daughter of plaintiff Mary Hughes. Plaintiff Rowe was seven months pregnant at the time of the accident, and she and her parents were concerned about her condition because she had previously had three miscarriages. On December 20, 1966, plaintiff Rowe was visiting at her mother's home on Eberwhite Boulevard. The boulevard was very slippery due to a heavy snowfall the previous night, and the street had not been cleared nor salted. At approximately 4:30 p.m. plaintiff Rowe backed her car out of the Hughes' driveway and proceeded north to the intersection at Liberty Street, where she stopped and waited to make a left turn onto Liberty Street.

Eberwhite Boulevard is four blocks long, with median strips dividing two northbound lanes from two southbound lanes. The defendant, a resident of Gagetown, Michigan, but a former student in Ann Arbor, was visiting friends on Eberwhite Boulevard. He was no stranger to Eberwhite Boulevard, having traversed it numerous times prior to December 20, 1966. On that day, at about 4:30 p.m., defendant left his friends' home, proceeded south on Eberwhite Boulevard, circled around the median, and then proceeded north on Eberwhite Boulevard. As he reached the intersection of Woodbridge Boulevard and Eberwhite Boulevard, defendant was in a position 300 feet from the Liberty Street intersection and would have had a clear view of that intersection. This last fact was stipulated to by defense counsel.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

The defendant stated that he was driving at 15 miles per hour and had traveled 100 to 200 feet past the Woodbridge Boulevard intersection before he noticed plaintiff Rowe's stopped vehicle. He then traveled another 25 to 30 feet before he applied his brakes, which did not hold, due to the ice on the roadway, and defendant slid into plaintiff Rowe's car. The resulting crash caused her car to be pushed out into the southward lanes of Liberty Street. At no time did the defendant sound his horn or make visible attempts to swerve out of the way. There is a dispute as to the force of the crash. There is also a dispute as to whether the defendant put his car in "park", set his emergency brake, or put on his emergency flashers.

In any event, the defendant dashed from his car to assist plaintiff Rowe, who had panicked and was attempting to scramble out of her car. Plaintiff Hughes, having seen the accident, rushed to aid her daughter. She took the most direct route and passed between her daughter's car and the car of the defendant. At the exact instant that she passed between the two cars, a third car driven by Ralph Lewis, collided with the defendant's car and the resultant crash knocked plaintiff Hughes to the ground.

Plaintiff Hughes thereafter developed a large hematoma on her right leg; this was followed by thrombophlebitis and eventually a massive pulmonary embolism. Plaintiff Rowe's child was delivered in a normal birth.

Prior to commencing suit against the defendant, plaintiff Hughes settled her claim with Ralph Lewis for $35,000.

After hearing the evidence, arguments of counsel, and instructions of the court, the six-man jury returned unanimous verdicts of "not guilty".

Plaintiffs appeal from judgments of no cause of action for each of the plaintiffs, entered by the trial court pursuant to the jury's verdict. We reverse for the reasons stated herein.

I.

In response to the question, "Would you consider yourself a safe driver on December 20, 1966?", the defendant replied, "Yes, I did". The trial judge refused to allow plaintiffs to further cross-examine defendant with respect to his traffic convictions. In *Sting v Davis,* 384 Mich 608, 613–614 (1971), the Supreme Court stated:

"GCR 1963, 607 was adopted by this Court in accordance with its rulemaking powers as to evidentiary matters. The central issue in practically every contested motor vehicle accident case is whether defendant-driver was guilty of negligence and, if the plaintiff was the driver of the other motor vehicle, whether he was free from contributory negligence. As to the defendant, the question which confronts the jury is whether to believe the claim of the plaintiff that the defendant was negligent or the claim of the defendant that he was not negligent and, as to a plaintiff-driver, the issue is just the reverse. *Almost invariably,* as in this case, *the defendant asserts, 'I did not drive in a negligent fashion.'* If the plaintiff was also a motor vehicle driver, as in this case, he makes the same assertion as to his driving upon finding himself accused of being the responsible party because of negligent driving. *On the issue of whom to believe, the driving record of a plaintiff or of a defendant can become a crucial evidentiary factor. That driving history,* both before and after the accident, whether it be for serious or minor infractions of the vehicle code, *can have a vital bearing in enabling a jury to determine the truth of a plaintiff's or defendant's testimony as to the exercise of due care.*

"We conclude that under GCR 1963, 607, as presently adopted by this Court, *a trial judge has no discretion to*

*exclude cross-examination with regard to the driving
history of a plaintiff-driver or of a defendant-driver,
such cross-examination being proper to test the credibil-
ity of the witness' testimony with regard to the central
fact issue in the case."*(Emphasis added.)

It was error for the trial court to refuse to allow
plaintiffs to cross-examine defendant regarding his
traffic convictions for purposes of impeachment,
where the credibility of defendant's testimony as
to his exercise of due care is at issue. See also
*Taylor v Walter,* 385 Mich 599, 600 (On Rehearing,
1971), adopting Justice BLACK's opinion in *Taylor v
Walter,* 384 Mich 114, 117–120 (1970); cf. *Kuhnee v
Miller,* 37 Mich App 649 (1972).

## II.

The trial judge charged the jury as follows:

"[I]f you find that the defendant was confronted with
a sudden emergency not of his own making and if you
find that he used ordinary care and was still unable to
avoid the violation because of such emergency, then his
violation [of the assured-clear-distance statute, MCLA
257.627; MSA 9.2327(a)] is excused."

Plaintiffs objected to this instruction.
In *VanderLaan v Miedema,* 385 Mich 226, 231–
232 (1971), the Supreme Court discussed the sud-
den emergency doctrine as follows:

"Was there evidence to support the sudden emer-
gency instruction of the trial court?
"Under the rear-end collision statute a rebuttable
presumption arises that the offending driver is *prima
facie* guilty of negligence. *Petrosky v Dziurman* (1962),
367 Mich 539, 543; *Garrigan v LaSalle Coca-Cola Bot-
tling Co* (1961), 362 Mich 262, 263. However, a violation
of the assured-clear-distance statute constitutes negli-

gence *per se. McKinney v Anderson* [373 Mich 414, 419 (1964)].

"However, as we have previously indicated the assured-clear-distance statute must be 'reasonably construed.' *Sun Oil Co v Seamon* (1957), 349 Mich 387, 411. As such, it is not applicable under all circumstances where it might otherwise be literally employed. Instead, it is subject to 'qualification by the test of due or ordinary care, exercised in the light of the "attending conditions." ' *Patzer v Bowerman-Halifax Funeral Home,* [370 Mich 350, 353 (1963)].

"One such instance, where this statute is inapplicable, arises when a collision is shown to have occurred as the result of a sudden emergency not of the defendants' own making. *McKinney v Anderson, supra.* Defendants urge us to apply that rule here. But, as far as our disposition of the present case is concerned, it must be recognized from a logical as well as from a legal point of view, that for the emergency doctrine to apply an 'emergency' within the meaning of that rule must have existed. See Annot., 80 ALR2d 5, 15.

"To come within the purview of this rule the circumstances attending the accident must present a situation that is 'unusual or unsuspected.' *Barringer v Arnold* (1960), 358 Mich 594, 599.

"The term 'unusual' is employed here in the sense that the factual background of the case varies from the everyday traffic routine confronting the motorist. Such an event is typically associated with a phenomenon of nature. A classical example of the 'unusual' predicament envisioned by the emergency doctrine is provided by *Patzer v Bowerman-Halifax Funeral Home, supra,* wherein the accident occurred amid an Upper Peninsula blizzard.

" 'Unsuspected' on the other hand connotes a potential peril within the everyday movement of traffic. To come within the narrow confines of the emergency doctrine as 'unsuspected' it is essential that the potential peril had not been in clear view for any significant length of time, and was totally unexpected. A good example of this can be seen in *McKinney v Anderson, supra,* where defendant rear-ended a plaintiff's car

which had stopped while pushing a disabled vehicle on the highway. Coming over the crest of a hill, defendant first saw plaintiff's taillights when he was 400 feet away. However, defendant did not clearly see the peril of plaintiff's stopping until he was about 100–200 feet away, at which point it was too late to avoid a collision under the circumstances. Furthermore, the failure of the plaintiff to signal that he was stopping, coupled with the surrounding darkness, made the subsequent peril totally unexpected to the defendant."

In *Morrison v Demogala,* 336 Mich 298, 303 (1953), Supreme Court held:

"Defendant is not to be excused from the consequences of negligence by his testimony as to the icy condition of the highway at the scene of the collision. He had driven over the same road within 2 hours before the accident; the statement of his answer, hereinbefore quoted, makes clear that he was required and warned by the general condition of the road, to be on the lookout for icy spots.

"Defendant was clearly negligent as a matter of law in driving his automobile at such speed and under the then existing circumstances known to him, that he could not stop within the assured clear distance ahead.

"The court was without error in charging the jury in effect that defendant was as a matter of law, guilty of negligence."

Examining the criteria set up in *VanderLaan v Miedema, supra,* and *Morrison v Demogala, supra,* it is readily apparent that the court erred in charging the jury that a sudden emergency would excuse defendant's violation of the assured-clear-distance statute. The icy condition of the road was not "unusual" for a December day, particularly where there had been a heavy snowfall the previous night. Nor was it "unexpected", as in *VanderLaan* the court noted that "it is essential that the potential peril had not been in clear view for

any significant length of time, and was totally
unexpected". The evidence as presented at trial
does not fall within this last quoted statement.
Evidence was presented and stipulated to that the
defendant could have had a clear view of the
plaintiff's car for 300 feet. Furthermore, the evi-
dence established that the defendant was aware of
the snow on the ground and thus could expect
certain icy conditions. Under these facts, the trial
court should not have given an instruction that a
sudden emergency would excuse defendant's negli-
gence.

### III.

Plaintiff Mary Hughes requested a jury instruc-
tion on the rescue doctrine as a defense to contrib-
utory negligence. The trial court refused to so
instruct the jury, but did instruct the jury as to
contributory negligence. The trial court stated that
it knew of no law concerning a rescue doctrine
instruction in Michigan, and that the Supreme
Court, in § 13.04 of the new Standard Jury In-
structions, recommended that no instruction be
given in imminent peril cases.

SJI 13.04 states:

"The committee recommends that no instruction be
given either *on the duty of one in imminent peril* or the
responsibility of the person causing the perilous situa-
tion." (Emphasis added.)

The committee comment to SJI 13.04 cites *Tries-
tram v Way,* 286 Mich 13 (1938), a case dealing
with the sudden emergency doctrine.

SJI 13.04 does not apply in this case. GCR
516.6(4) directs the trial courts to give additional

instructions where the SJI instructions are inadequate or incomplete, and the rescue doctrine is one such area not covered by the SJI.

The rescue doctrine is applicable in Michigan. See *Brugh v Bigelow,* 310 Mich 74, 77, 80 (1944), citing *Wagner v International R Co,* 232 NY 176; 133 NE 437; 19 ALR 1 (1921); *Parks v Starks,* 342 Mich 443 (1955); *Brown v Ross,* 345 Mich 54 (1956).

In *Parks v Starks, supra,* at 449–450, the Supreme Court stated:

> "In response, however, to defendant's insistence that coming so close to a position of known danger amounts to contributory negligence as a matter of law, plaintiff invokes the 'rescuer' or 'Good Samaritan' doctrine, quoting 38 Am Jur, Negligence, § 228, p 912:
> " 'The rule is well settled that one who sees a person in imminent and serious peril caused by the negligence of another cannot be charged with contributory negligence, as a matter of law, in risking his own life or serious injury in attempting to effect a rescue, provided the attempt is not recklessly or rashly made. In other words, in attempting to save the life of another, one is justified in exposing himself to danger in a manner that under other circumstances would deprive him of legal redress for injuries sustained.' * * *
> "The quoted language is applicable to plaintiff's situation when he sought to rescue the children from a position of peril. It follows that he could not be charged with contributory negligence as a matter of law in assuming a risk to himself in order to save the children."

The trial court should have charged the jury that one who goes to the rescue of a person who is in imminent and serious peril caused by the negligence of another is not contributorily negligent, so long as the rescue attempt is not recklessly or rashly made.

Reversed and remanded.

J. H. Gillis, J. *(concurring)*. If I had the power (which I do not have), I would reverse *Sting v Davis,* 384 Mich 608 (1971), because I cannot in good conscience agree with it. As a member of a lower appellate court, I am submissive but not happy.

I reluctantly concur with my colleague Judge Louis D. McGregor's opinion and vote to reverse the trial court.

O'Hara, J. *(dissenting)*. I am in respectful disagreement with Judge McGregor in two particulars.

As to the first, he concluded that the trial judge was in error when he refused to allow plaintiffs' counsel to cross-examine the defendant with reference to his driving record. Principal reliance is placed upon *Sting v Davis,* 384 Mich 608 (1971).

In my view this reliance is ill-founded. *Sting* does not address itself to the precise point upon which the trial judge denied any further examination, namely, the insufficiency of the foundation laid to pursue the line of questioning. I do not read *Sting* to hold that the mere allegation in the complaint that a defendant was negligent at some given time or place, and the denial thereof in a responsive pleading, permits impeachment of a defendant driver by introduction of violations minor or major of the Motor Vehicle Code. It is one thing to say proof of such past violations are admissible as bearing upon credibility. It is quite another thing to hold decisionally in what manner and to what degree some foundation for impeachment must be laid. I do not believe that the Supreme Court in *Sting* meant to strip the trial judge of all discretion in the continuing supervision of the examination of a witness. In the instant case the only foundation question asked was:

"*Q.* Would you consider yourself a safe driver on December 20, 1966?" (The date of the accident.)

"*A.* Yes, I did."

Thereupon plaintiffs' counsel sought "to show that he [defendant] is not being truthful when he says he considers himself a safe driver".

I am hard put to know how the defendant's driving record could change his own subjective evaluation of himself as a driver. As the trial judge observed to plaintiffs' counsel,

"See, this question was asked by you, 'Do you consider yourself to be a safe driver?' He said, 'Yes'. And now you are trying to say that because he's guilty of speeding or something that this would impeach his testimony."

If this is not correct, I believe it not improper to add a direct quote from Mr. Justice T. G. Kavanagh's opinion in *Sting,* with which I am in agreement, "I am of the opinion that the Michigan rule should be improved".

I think the trial judge was well within his discretionary control of the conduct of the trial to prohibit further examination on this issue.

As to the sudden emergency situation, the defendant testified that his car struck a patch of glazed ice, different in kind from the rest of the surface of the road, and that this was the "sudden emergency" he encountered. I do not understand defendant's claim to be that a snow-covered, slippery street in Michigan in December was a sudden emergency.

For some time past there has been a growing trend in our Supreme Court to consider the verdict of the jury in negligence cases to be sacrosanct as

to issues of fact. In this case, a local jury heard local people give their versions of a most regrettable event. They exonerated the defendant. For all we know at our level of review, they may have so held on the question of proximate cause and not on the issue of negligence.

Assuming, *arguendo,* that some error may have been committed, I am convinced the whole charge of the court presented the issues fairly. I find no error which I consider reversible. I would affirm the jury verdict.