No. 47,586

WILLIAM E. ZELL, *Appellant*, v. MARY M. LUTHY, *Appellee*.

(533 P. 2d 1298)

Opinion filed April 5, 1975.

*George A. Lowe*, of Olathe, was on the brief for the appellant.

*Barton Brown*, of Overland Park, was on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: This is a rear end collision case in which the jury rendered a verdict for the defendant (Mary M. Luthy) and plaintiff (William E. Zell) has appealed. The ultimate question presented is whether the giving of an instruction on the doctrine of sudden emergency amounted to prejudicial error requiring a reversal. Plaintiff also contends the verdict was contrary to the evidence.

At approximately 4:45 p. m. on the afternoon of February 13, 1970, plaintiff was driving his automobile south on Nall Avenue toward the intersection of 83rd Street in Prairie Village. At the point in question Nall Avenue is a normal two-way street with a ditch on either side and no curb and is approximately twenty-eight feet in width. The posted speed limit is thirty-five miles per hour. At a point about 600 feet north of 83rd Street there is a crest of a small hill with a decending grade of twenty to twenty-five degrees incline as Nall Avenue runs south to 83rd Street. Plaintiff testified that as he came over the crest, heading south on Nall, he was traveling about twenty miles per hour; he started to slow his automobile as approached the stop sign on Nall at the 83rd Street intersection. As to the condition of Nall Avenue plaintiff testified:

"I consider the place on the road where the accident happened to be somewhat dangerous. It was slick, as was the whole area from the crest down to the base. I had been sliding somewhat from the time I went over the crest down to the point where the accident happened. I would not use the word

fishtailing, although my car may have slid slightly. I was having a slight difficulty in coming to a stop, but my vehicle was definitely never out of control. Rather, I had full control although I had previously slid slightly."

Plaintiff further testified that he had new snow tires on his automobile; that he had slowed his speed to approximately three to five miles per hour at the time of impact; and that he had not yet reached the stop sign on Nall Avenue preceding the 83rd Street intersection. His first notice of the accident was when defendant blew her automobile horn, which occurred almost simultaneously with the impact. The impact spun plaintiff's automobile around so that it was facing in a northerly direction on Nall Avenue and came to rest about forty to fifty feet north of the 83rd Street intersection.

At the time of the accident defendant was enroute home from her place of employment. She testified that it had started to snow before she left work about 4:30 p. m.; and that she was driving cautiously because of the snow. Her automobile was equipped with Uniroyal Master snow tires and was in good mechanical condition. She did not encounter any slick places on her route until she reached the scene of the accident. Defendant testified that she had stopped at four previous stop signs along the way and had encountered no difficulty, although there was snow on the pavement. She had traveled the same route many times since it was her normal way home from work, and had also traveled the street many times when it was snowing. Defendant's testimony describing the circumstances preceding the collision is narrated as follows:

"As I came over the top of the crest of Nall, I noticed Mr. Zell's car for the first time. You really can't see 83rd and Nall until you reach this crest. To the best of my judgment, I was going 20 miles per hour when I reached the crest of the hill, and I was being cautious because it was snowing. I saw Mr. Zell's car zigzagging in front of me and I realized at that moment that it was slick up ahead. By zigzagging, I mean that it was just sliding toward the intersection, although it remained entirely within its own lane. Realizing that it was slick ahead, I tried to stop and could not, so 'I just leaned on the horn rim and prayed.' I put the brake on and I guess I kept it on. My car did slow some before I slid into the back of Mr. Zell's car, which was still moving at the time. After impact, my car went sideways and into a little depression on the side of the street. . . ."

Officer Milan VanHouton, of the Prairie Village Police Departments, arrived at the scene soon after the accident. He testified it was snowing and that the street was slick at the scene of the accident. He related defendant's statement to him—

". . . She said that as both vehicles attempted to stop for the four-way stop, she lost traction on her rear wheels and struck Mr. Zell in the rear end. . . ."

There is no testimony from Officer VanHouton that he gave either of the parties a citation for a traffic violation.

Over objection of plaintiff's counsel, the trial court submitted P I K [Civil] 8.81 relating to the sudden emergency doctrine. The instruction reads:

"When one is suddenly confronted by an emergency not of his own making, consisting of circumstances that call for immediate, instinctive action, he is not required to exercise the same degree of care that he would be required to exercise had he time for reflection. Under such circumstances he is required to exercise such care as an ordinary person would exercise when confronted by a like emergency under circumstances then existing. The rule of sudden emergency cannot be invoked by a person who brought the emergency upon himself by his fault or did not use ordinary care to avoid it."

Plaintiff strenuously argues that there was no emergency and in the alternative if there was defendant created it and, therefore, it was prejudicial error to submit the instruction.

Defendant says that the emergency which confronted her was a slick street and she argues that the emergency was "sudden" because until the time of the accident she had not encountered any icy or slippery conditions sufficient to cause her to slide and, therefore, she had no reason to anticipate the slick spot that caused the accident.

Although the "emergency" instruction cannot be said to be erroneous as an abstract proposition of law (*Mesecher v. Cropp,* 213 Kan. 695, 518 P. 2d 504), we have questioned the practice of giving it in several recent cases. Even though not confronted with a specific claim of error based on giving or failing to give the instruction in *Lawrence v. Deemy,* 204 Kan. 299, 461 P. 2d 770, the reasoning expressed therein serves to explain the court's view concerning application of the doctrine in a negligence action. In *Lawrence* the question arose by appeal from a summary judgment for defendant rendered on the basis that discovery depositions disclosed undisputed facts establishing that defendant had acted in a sudden emergency and, therefore, was not negligent as a matter of law. In reversing the judgment below we had this to say:

"The doctrine of sudden emergency cannot be regarded as something apart from and unrelated to the fundamental rule that everyone is under a duty to exercise ordinary care under the circumstances to avoid injury to others. A claim of emergency is but a denial of negligence. Application of the doctrine is really application of the test for negligence couched in language tailored to a

peculiar situation. The fact that a person is confronted with a sudden emergency not caused by his own tortious conduct which requires rapid decision is merely a factor in determining the reasonable character of his choice of action and whether his conduct constituted negligence. . . ." (p. 303.)

*Lawrence v. Deemy,* supra, was followed by our decision in *Kline v. Emmele,* 204 Kan. 629, 465 P. 2d 970, wherein we elaborated on the reasoning of *Lawrence* and held:

"A defense of sudden emergency is but a denial of negligence and where negligence, burden of proof and proximate cause have been properly defined in the instructions, whether an instruction should be given on sudden emergency rests in the sound discretion of the trial court." (Syl. ¶ 2.)

In the *Kline* opinion it was further stated:

"We are impressed with the suggestion that where there is definite evidence of negligence on the part of the defendant, the weight of such evidence might be entirely destroyed by an instruction of sudden emergency. Such an instruction might well cause the jury to lose sight of the negligence which caused the emergency." (p. 632.)

*Kline* was followed by *Mesecher v. Cropp,* supra, wherein we held:

"An instruction on 'sudden emergency' should not be given where there is definite evidence of negligence on the part of the defendant and such an instruction might well cause the jury to lose sight of the negligence which caused the emergency." (Syl. ¶ 7.)

Following our decision in *Mesecher* the PIK Committee in its 1975 supplement recommended that no instruction be given on the doctrine of sudden emergency. After reviewing the cases heretofore mentioned the Committee commented:

"The Committee believes there is no valid justification for the continued giving of the instruction. The emergency circumstances are a proper matter for argument by counsel." (p. 88.)

Finally, in *Hallett v. Stone,* 216 Kan. 568, 534 P. 2d 232, we found prejudicial error in giving an emergency instruction, when defendant, by her own testimony, admitted negligence which preceded and created the situation which she claimed to be a sudden emergency.

Unlike the situation in *Hallett,* we are unable to say that as a matter of law defendant in the case at bar, by her own negligence, created the situation she found herself in. Neither are we able to say, under the evidence adduced, that as a matter of law no emergency existed. Generally, both propositions may be considered by the jury together with all of the relevant evidence adduced in determining whether a party was guilty of negligence which was

the proximate or direct cause of the accident in question. The PIK Committee's recommendation that no instruction be given is in harmony with our recent decisions, but this does not mean that evidence of emergency circumstances is inadmissible and not to be considered by the jury. We agree with the Committee's comment that emergency circumstances are a proper matter for argument by counsel. In the instant case the critical question for the jury's determination was whether, under all the circumstances shown to exist, defendant's actions in handling her automobile, preceding the collision, constituted negligence which caused the accident. The fact that defendant's automobile skidded on a street, that was slippery because of ice and snow and defendant lost control of it, does not in and of itself require a finding that the collision was caused by her negligence. (*Carpenter v. Gillard,* 166 Kan. 689, 204 P. 2d 595.)

The acts of negligence with which defendant was charged were enumerated in plaintiff's petition as follows:

"(6) That the defendant at said time and place negligently and carelessly operated her vehicle as follows:

"(*a*) In driving her vehicle at an excessive rate of speed under the conditions then and there existing;

"(*b*) In failing to maintain a proper lookout for plaintiff and others using the streets;

"(*c*) In failing to keep her vehicle under control;

"(*d*) In failing to apply her brakes;

"(*e*) In following plaintiff's vehicle too closely."

The court's instructions recited the acts of negligence charged and included a full recitation of applicable rules of the road and a definition of negligence.

Defendant testified that she was driving cautiously because of the snow, although she had not experienced any difficulty prior to the accident. She stated that she was driving at a reduced speed of twenty miles per hour (the same speed testified to by plaintiff) when she came over the hill on Nall, she saw plaintiff's car as she came over the rise and "when I first saw it, it seemed like a long ways." Defendant was charged with failing to apply her brakes, she testified that she did apply the brakes and slowed her automobile before the impact. There is no specific testimony by Officer VanHouton, or by the plaintiff, as to what defendant did or did not do under the circumstances that constituted negligence. In other words, if the jury gave full credit to defendant's testimony, which it had a right to do and apparently did, the result would be

a defendant's verdict, which was the case. In the light of the evidence in this case counsel, of course, would argue that the accident resulted from the circumstances rather than from any of the acts of negligence charged against defendant—regardless whether an emergency instruction was submitted. Under the particular facts and circumstances disclosed by the record before us, we are unable to say that the jury was prejudiced by the submission of the instruction in question.

Cases from several jurisdictions dealing with the giving of sudden emergency instructions involving street and road conditions are annotated in 80 A. L. R. 2d, Anno., § 11, pp. 44, 45, and in the later case service supplement. Generally, it may be said that the decisions noted are based upon the facts and circumstances of the particular case. Plaintiff cites *Hughes v. Polk,* 40 Mich. App., 634, 199 N. W. 2d 224, involving a rear end intersection collision on an icy street wherein the Michigan Court of Appeals found the submission of an emergency instruction to be prejudicial and one of several trial errors which compelled a reversal of the judgment. The instruction in *Hughes* was tied to the Michigan "assured-clear-distance" statute [MCLA 257.627; MSA 9.2327 (*a*)] and the facts are distinguishable from those at bar. Other jurisdictions have approved emergency instructions in automobile negligence actions involving snowy or icy roads, *e. g., Gran v. Dasovic,* 275 Minn. 415, 147 N. W. 2d 576; and *Peterson v. Sapp,* (Okla.) 385 P. 2d 498.

As indicated in our decisions previously discussed, we take the view that the better practice is to leave the jury wholly free to give whatever consideration it deems appropriate to evidence of emergency circumstances in determining the reasonable character of a person's choice of action and whether his conduct constituted negligence. (*Lawrence v. Deemy,* supra.) However, upon all the instructions given and the evidence presented by the record in this case, we do not think the giving of the instruction was prejudicial to the plaintiff. We reached the same conclusion when confronted with the question in *Montgomery v. Morgenson,* 213 Kan. 167, 515 P. 2d 746; and *Harbaugh v. Darr,* 200 Kan. 610, 438 P. 2d 74, wherein we found that although the doctrine of sudden emergency was inapplicable the giving of an instruction thereon was not prejudicial.

The general verdict, which was warranted under the evidence

adduced, absolved the defendant of negligence and, therefore, the judgment below must be affirmed.

FATZER, C. J., dissenting.

FROMME, J., not participating.