PHARDEL v STATE OF MICHIGAN

Docket No. 56462. Submitted June 1, 1982, at Detroit.—Decided
November 2, 1982. Leave to appeal applied for.

Rose Phardel was injured when she drove her car into a roadway
excavation in Oakland County. She died approximately 18
months later from a subarachnoid hermorrhage caused by the
rupturing of a berry aneurysm. John Phardel, administrator of
the estate of Rose Phardel, brought separate wrongful death
actions against the contractor, Ajax Paving Industries, Inc., and
against the State of Michigan and the Michigan Department of
State Highways. The action against Ajax was brought in Oak-
land Circuit Court and the action against the State of Michigan
and the Department of State Highways was brought in the
Court of Claims. The cases were consolidated for trial and were
heard simultaneously by a jury sitting as trier of fact in the
case against Ajax and by George LaPlata, J., sitting as trier of
fact in the case against the state. The jury returned a verdict
for damages against Ajax in the amount of $4,496.24 and found
that Rose Phardel was 62% negligent. Judge LaPlata awarded
damages of $136,290 to plaintiff in the case against the state
and found that Rose Phardel was 30% negligent. Defendants
State of Michigan and Michigan Department of State Highways
appeal the judgment and award of damages against them and
plaintiff cross-appeals, contending that the doctrine of compara-
tive negligence should not apply to this case. *Held:*

1. The trial court did not abuse its discretion in allowing

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 31 Am Jur 2d, Expert and Opinion Evidence § 26 *et seq.*

[2] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 352.

[3] 31 Am Jur 2d, Expert and Opinion Evidence §§ 181, 182.

[4] 5 Am Jur 2d, Appeal and Error §§ 607, 695.

[5] 74 Am Jur 2d, Torts §§ 76, 78.

Propriety and effect of jury's apportionment of damages as between
tortfeasors jointly and severally liable. 46 ALR3d 801.

[6] 53 Am Jur 2d, Master and Servant § 230.

57 Am Jur 2d, Negligence § 426 *et seq.*

Am Jur New Topic Service, Comparative Negligence §§ 1, 38.

Modern development of comparative negligence doctrine having
applicability to negligence actions generally. 78 ALR3d 339.

plaintiff administrator, who is a licensed osteopathic surgeon, to testify as an expert on the cause of Rose Phardel's death.

2. The evidence presented by plaintiff that defendant's negligence proximately caused Rose Phardel's death was sufficient to submit the issue to the trier of fact and support a finding of proximate cause by a preponderance of the evidence.

3. The trial court's findings that defendants exercised control over the construction site and were negligent are not clearly erroneous and will not be set aside.

4. The variance between the jury's verdict of the degree of negligence and the trial court's finding of negligence does not require the conclusion that the trial court erred.

5. Plaintiff was not collaterally estopped from enforcing the judgment against defendants by the jury's announcement of its verdict against Ajax.

6. The trial court correctly applied comparative negligence in this case.

Affirmed.

1. WITNESSES — EXPERT WITNESSES — QUALIFYING WITNESSES AS EXPERTS.

The question of whether a witness is qualified to render an expert opinion on a particular subject is a matter for the discretion of the trial court; considered in determining a witness's qualifications are learning, knowledge, skill or practical experience to enable the witness to competently give expert testimony (MRE 702).

2. WITNESSES — PHYSICIANS AND SURGEONS — EXPERT WITNESSES.

It is unnecessary for a doctor to be a specialist before he may give an opinion as an expert witness.

3. WITNESSES — EXPERT WITNESSES.

The weight to be given an expert witness's opinion is determined by the trier of fact who has heard the witness's credentials.

4. APPEAL — FINDINGS OF FACT — CLEAR ERROR.

A trial court's findings of fact in a bench trial will not be set aside unless clearly erroneous; findings are clearly erroneous where, although there is evidence to support them, the reviewing court is left with a firm conviction that a mistake has been made (GCR 1963, 517.1).

5. JUDGMENTS — JOINT TORTFEASORS — DAMAGES — SUBSEQUENT ACTIONS.

The rendition of a judgment in an action against one of two or more persons liable for a tort does not affect the claim against

another tortfeasor; therefore, an award of a small amount as damages in an action against one of a number of joint tortfeasors does not necessarily prevent the obtaining of a judgment for a larger amount in a subsequent action against another of the tortfeasors.

6. Negligence — Comparative Negligence.
    The doctrine of comparative negligence applies to all instances of workplace negligence.

*Dice, Sweeney, Sullivan & Feikens, P.C.* (by *Jon Feikens*), for plaintiffs.

*Schier & Deneweth, P.C.* (by *Carl F. Schier*), for defendants.

Before: Bronson, P.J., and R. M. Maher and M. Warshawsky,* JJ.

M. Warshawsky, J. Defendants appeal by right from a judgment and award of damages entered against them in the Court of Claims. Plaintiff cross-appeals.

Rose Phardel, plaintiff's decedent, was injured June 5, 1976, when she drove her car into a roadway excavation in Oakland County. She died some 18 months later on December 13, 1977, from a subarachnoid hemorrhage caused by the rupturing of a berry aneurysm.

Plaintiff brought separate wrongful death actions, the first in Oakland County Circuit Court against the contractor, Ajax Paving Industries, Inc., and the second against defendants in the Court of Claims. Against defendants, plaintiff alleged breach of the state's statutory obligation to keep the highway in a reasonably safe condition for public travel. Against the contractor, plaintiff

* Circuit judge, sitting on the Court of Appeals by assignment.

alleged breach of both the contractor's legal and contractual duties to erect and maintain adequate signs and barricades to warn the public that an excavation had been opened in the road. The two cases were consolidated *for trial.* They were heard simultaneously by a jury sitting as trier of fact in the case against the contractor and by Judge George LaPlata sitting as trier of fact in the Court of Claims case against defendants.

On the issue of causation, plaintiff presented the testimony of the plaintiff, Dr. John Phardel. Defendants argue Dr. Phardel should not have been allowed to give an opinion on the cause of Mrs. Phardel's death because he was not a specialist in either neurological or cardiac surgery. After diagnosing a subarachnoid hemorrhage in his wife, Dr. Phardel did not treat her, but instead sought the help of another physician.

A trial court's determination that a witness is qualified to render an expert opinion on a particular subject is reviewed for an abuse of discretion. *Patelczyk v Olson,* 95 Mich App 281; 289 NW2d 910 (1980). Some factors considered in determining a witness's qualifications are: learning, knowledge, skill or practical experience to enable the witness to competently give expert testimony. *Siirila v Barrios,* 398 Mich 576, 591; 248 NW2d 171 (1976); MRE 702.

It is unnecessary for a doctor to be a specialist before he may give an expert opinion. *Earls v Herrick,* 107 Mich App 657, 665-666; 309 NW2d 694 (1981); *Croda v Sarnacki,* 106 Mich App 51, 60; 307 NW2d 728 (1981). Defendants misconstrue *Callahan v William Beaumont Hospital,* 67 Mich App 306; 240 NW2d 781 (1976), *aff'd* 400 Mich 177; 254 NW2d 31 (1977), as holding that a generalist may not express an opinion on a medical situation

he would not attempt to treat or diagnose. See discussion of *Callahan* in *Siirila, supra,* p 594.

The trial court did not abuse its discretion in allowing plaintiff to testify as an expert on the cause of Mrs. Phardel's death. Dr. Phardel was a licensed osteopathic surgeon in Michigan whose practice involved accident or trauma surgery, predominantly abdominal, pelvic and chest surgery. Dr. Phardel testified that he was able to diagnose the presence of such neurological and vascular conditions as an aneurysm and subarachnoid hemorrhage, that he had treated pathological and surgical problems involving the brain as a student, an intern and as a resident, and that, in treating his patients for abdominal, chest and accident problems, he had dealt with existing neurological problems and trauma to the head. The weight to be given the expert's opinion is determined by the trier of fact, in this case the trial judge, who has heard the witness's credentials.

Defendants next argue that plaintiff failed to prove by a preponderance of the evidence that defendants' negligence proximately caused Mrs. Phardel's death. Defendants heavily rely on a portion of Dr. Phardel's testimony on cross-examination that it was equally as likely, that it was possible that the aneurysm in Mrs. Phardel's brain burst for reasons unrelated to the accident and that he could not say within a reasonable medical certainty that the accident caused the death.

A broader view, however, of Dr. Phardel's testimony reveals that he believed there was a direct causal relationship. For example, Dr. Phardel testified:

"* * * I said in my opinion, there was a direct relationship between the force and the injuries of that trauma that could and did in fact injure the vessel to

cause an aneurysm possibly to develop in that 18-month interval or hasten the rupture of a pre-existing aneurysm. There's no way in the world that I or any of the doctors at William Beaumont could pin it down any more than that. It's impossible to do it. It can't be done."

The persuasiveness of Dr. Phardel's testimony was properly for the trier of fact to determine. *Yates v Wenk,* 363 Mich 311; 109 NW2d 828 (1961); 31 Am Jur 2d, Expert and Opinion Evidence, § 113, pp 652-653. The aneurysm involved in Mrs. Phardel's death presented problems of gaps in scientific knowledge. Thus, the matter does not turn on the particular form of words used in the testimony. *Kostamo v Marquette Iron Mining Co,* 405 Mich 105; 274 NW2d 411 (1979).

Moreover, other evidence in the plaintiff's case tended to establish the requisite connection and was sufficient for the trier of fact to find proximate cause. We do not substitute our reasoning for that of the trier of fact. On December 10, 1977, Dr. Phardel received word that his wife was complaining of a severe headache in the back of her head, worse than she had ever experienced. When Mrs. Phardel was brought to the hospital in an ambulance, Dr. Phardel saw that she had suffered a stroke. The examining doctor said Mrs. Phardel had suffered a subarachnoid hemorrhage. Plaintiff's case showed that the aneurysm could have been caused by the accident and that, immediately after the accident, Mrs. Phardel began to exhibit symptoms of a berry aneurysm. This evidence was sufficient to submit the issue to the trier of fact and support a finding of proximate cause by a preponderance of the evidence. *Howard v Melvindale,* 27 Mich App 227; 183 NW2d 341 (1970).

Nor can we agree with defendants' claim that

the trial court's decision in plaintiff's favor was against the great weight of the evidence. A trial judge's findings of fact in a bench trial will not be set aside unless clearly erroneous. GCR 1963, 517.1. Findings are clearly erroneous when, although there is evidence to support them, the reviewing court is left with a firm conviction that a mistake has been made. *Hartford Ins Group v Mile High Drilling Co,* 96 Mich App 455; 292 NW2d 232 (1980).

We do not find clearly erroneous the trial court's conclusions that defendants exercised control over the construction site and were negligent. James Nelson, the project engineer employed by defendant Michigan Department of Transportation, testified that he and others had the duty to oversee the work done by the contractor on a daily basis to see that it was performed in accordance with the specifications and plans. Edward Lucas, the construction engineer of the Department of Transportation, testified that it was his job to supervise placement of lights and barricades and to determine whether the job conditions were safe or unsafe. Lucas was at the job site on the day of the accident. The trial court's conclusions that Lucas was present at the scene of the accident and exercised control over the operation are not clearly erroneous. The fact that the contractor was to physically perform the work leaves unaffected the trial court's findings that defendants exercised control over the operation.

The variance between the jury's verdict of negligence and the trial judge's finding of negligence does not require the conclusion that the trial judge erred. The jury announced damages against the contractor in the amount of $4,496.24 and found comparative negligence of 62%. After hearing the

jury verdict, the trial judge read his prepared opinion awarding damages of $136,290 reduced by 30% due to Mrs. Phardel's comparative negligence.

The questions of negligence between the contractor and the defendants are not truly comparable since plaintiff asserted different theories of negligence against each. Breach of a statutory duty to keep the highway in reasonably safe condition for public travel may well not render the same liability as breach of a contractual duty to erect and maintain adequate warning signs and barricades. Moreover, both the findings of negligence and 30% comparative negligence are supported by evidence.

Lastly, defendants claim that once the jury announced its verdict against the contractor, plaintiff was collaterally estopped from enforcing the judgment against defendants by the doctrine of estoppel by judgment. Defendants cite Restatement Judgments, § 96, pp 472-473, which states:

"(1) Where two persons are both responsible for a tortious act, but one of them, the indemnitee, if required to pay damages for the tort, would be entitled to indemnity from the other, the indemnitor, and the injured person brings an action against the indemnitor because of such act, a valid judgment

"(a) for the defendant on the merits for reasons not personal to the defendant terminates the cause of action against the indemnitee;

"(b) for the plaintiff binds him as to the amount of recovery in a subsequent action by him against the indemnitee, but does not bind the indemnitee in any respect.

"(2) If the injured person brings such an action against the indemnitee, the judgment binds neither the plaintiff nor the indemnitor in a subsequent action between them, except as stated in § 99."

Defendants argue that particularly section (1) applies because the contractor in this case contractually agreed to indemnify defendants in an action arising from the construction.

The rule cited by defendants, however, does not apply where there are two concurrent tortfeasors. Restatement Judgments, § 96, p 480, comm h. Plaintiff's case presents concurrent negligent acts by the contractor and defendants which resulted in injuries to Mrs. Phardel. Separate acts of negligence were asserted. Where two or more persons are concurrently liable for a tort, the rendition of a judgment against one of them does not affect the plaintiff's claim against the other, and an award of a small amount of damages against the first does not prevent obtaining judgment for a larger amount in a subsequent action against another of the tortfeasors. *Belin v Jax Kar Wash No 5, Inc,* 95 Mich App 415; 291 NW2d 61 (1980).

On cross-appeal, plaintiff urges that the doctrine of comparative negligence should not apply in the present factual situation. Relying on *Funk v General Motors Corp,* 392 Mich 91; 220 NW2d 641 (1974), and *Tulkku v Mackworth Rees Div of Avis Industries, Inc,* 406 Mich 615; 281 NW2d 291 (1979), plaintiff imaginatively likens these facts to the failure to provide an adequate safety device in the workplace. *Funk* and *Tulkku* prohibited application of the defense of contributory negligence to certain workplace accidents.

Since the Supreme Court recently decided that the defense of comparative negligence applies in situations like *Funk* and *Tulkku, Hardy v Monsanto Enviro-Chem Systems,* 414 Mich 29; 323 NW2d 270 (1982), plaintiff's argument loses its force. We do not discuss whether there are paral-

lels between this case and *Funk* and *Tulkku.* The trial court correctly applied comparative negligence in the present case.

Affirmed.