SWEETMAN v STATE HIGHWAY DEPARTMENT

Docket No. 63613. Submitted March 7, 1984, at Lansing.—Decided September 4, 1984.

Plaintiff, Rosalyce Sweetman, sustained severe personal injuries while attempting to warn oncoming traffic of the occurrence of an automobile accident on an icy interstate highway. Plaintiff thereafter brought an action in the Court of Claims against the defendant, Michigan State Highway Department, alleging that the defendant negligently designed, constructed and maintained the highway. The trial court, Woodrow A. Yared, J., rendered a judgment for the plaintiff for $250,000. That amount represented the court's finding of $1,000,000 in damages reduced by a finding that the plaintiff was 75% negligent. Defendant appeals from the court's finding of negligence. The plaintiff cross-appeals challenging the finding of comparative negligence, the amount of interest awarded and the taxation of certain costs. *Held:*

1. The trial court did not err in finding the defendant liable for failing to keep the overpass in a reasonably safe condition.

2. The deference given by the trial court to the opinion of the plaintiff's expert that the highway design was defective is not cause to reverse. Plaintiff submitted sufficient evidence to dem-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 5 Am Jur 2d, Appeal and Error § 839 *et seq.*
[3] 81 Am Jur 2d, Witnesses § 656 *et seq.*
[4, 5, 7] 39 Am Jur 2d, Highways, Streets, and Bridges §§ 337-340.
[5] 39 Am Jur 2d, Highways, Streets, and Bridges §§ 352, 411.
[6] 39 Am Jur 2d, Highways, Streets, and Bridges § 506.
[8] 39 Am Jur 2d, Highways, Streets, and Bridges §§ 397, 398, 491.
[9-11] 57 Am Jur 2d, Negligence § 418 *et seq.*
  Rescue doctrine: negligence and contributory negligence in suit by rescuer against rescued person. 4 ALR3d 558.
[12] 45 Am Jur 2d, Interest and Usury § 60.
[13] 72 Am Jur 2d, States, Territories, and Dependencies § 90 *et seq.*
[14] 20 Am Jur 2d, Costs §§ 53-56.
  23 Am Jur 2d, Depositions and Discovery § 74.
  31 Am Jur 2d, Expert and Opinion Evidence § 13.

onstrate that the defendant had constructive notice of the defect complained of.

3. The trial court did not clearly err in finding that the warning sign posted by the defendant did not constitute adequate warning.

4. The trial court's finding that the defendant failed to timely discover and alleviate the slippery condition was unduly speculative. Although this finding was clearly erroneous, the error was harmless since the court's other findings were sufficient to support a finding of liability.

5. Any error occurring in the trial court's taking judicial notice of a fact after the trial and without notice was harmless.

6. The trial court properly found that comparative negligence principles do apply to rescue cases.

7. The trial court imposed an erroneous and unduly restrictive standard in defining the scope of the plaintiff's rescue mission. A plaintiff remains in the course of a rescue attempt where the plaintiff acts under a reasonable belief that the endangered party's peril continues. The Court of Appeals determined from the record that it is not unreasonable that plaintiff, at the time she sustained her injuries, believed that the driver of the automobile whom she was seeking to warn other drivers about was vulnerable to being further injured by a sliding car and hence was yet imperiled. Because the trial court made no findings in this respect, the Court of Appeals vacated the trial court's determination that the plaintiff was not engaged in a rescue at the time of her injury and remanded for reconsideration of this issue. If the trial court finds upon remand that the plaintiff was within the scope of her resuce when injured, it shall make a redetermination of plaintiff's comparative negligence.

8. The statute allowing 5% interest on a judgment in a Court of Claims action is viable and not unconstitutional.

9. The trial court did not err in denying plaintiff's motion seeking a writ of execution or in the alternative mandating that the state post a bond.

10. The trial court did not err in refusing to tax costs for depositions, but erred in refusing to permit taxation of costs for expert witness fees. Plaintiff's taxable costs are to be adjusted accordingly on remand.

Affirmed in part, reversed in part and remanded.

R. L. TAHVONEN, J., concurred with the majority except as to their remand for reconsideration on the question of plaintiff's comparative negligence. He believes that the trial court has

already expressly found that the activities of the plaintiff at the time that this tragedy occurred were beyond the scope of the intended rescue effort. He believes that such a finding is not clearly erroneous and should be affirmed on appeal.

1. APPEAL — FINDINGS OF FACT.

A trial court's findings of fact in a bench trial will not be set aside unless clearly erroneous.

2. APPEAL — FINDINGS OF FACT.

An appellate court will not reverse where a party claims that the evidence does not support the trial court's findings in a bench trial unless, on the entire record, the appellate court is left with a definite and firm conviction that a mistake has been committed.

3. WITNESSES — CREDIBILITY — COURT RULES.

The credibility to be given to a witness is a question for the trier of fact; special regard is given in a bench trial to the findings of the trial court (GCR 1963, 517.1).

4. HIGHWAYS — MAINTENANCE — DAMAGES.

Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel; any person sustaining bodily injury or property damage as a result of an agency's failure in this regard may recover the damages suffered from such governmental agency (MCL 691.1402; MSA 3.996[102]).

5. HIGHWAYS — DEFECTIVE HIGHWAYS — NOTICE — DAMAGES.

No governmental agency having jurisdiction over highways is liable for injuries or damages caused by a defective highway unless the agency knew, or in the exercise of reasonable diligence should have known, of the existence of the defect and had a reasonable time to repair the defect before the injury or damage took place; knowledge of the defect and time to repair the same shall be conclusively presumed when the defect existed so as to be readily apparent to an ordinarily observant person for a period of 30 days or longer before the injury or damage took place (MCL 691.1403; MSA 3.996[103]).

6. HIGHWAYS — ICE — SNOW — PREFERENTIAL ICING — NEGLIGENCE.

The mere presence of snow or ice on a public thoroughfare does not constitute negligence on the part of public authorities; preferential icing is a natural accumulation of ice for which liability does not inherently attach; however, a governmental

agency having jurisdiction over a highway has a statutory duty to avoid overpass design and construction that significantly aggravates the problem (MCL 591.1402; MSA 3.996[102]).

7. HIGHWAYS — MAINTENANCE — DEFECTIVE DESIGN.

Each governmental agency having jurisdiction over a highway has a continuing duty to maintain the highway in a condition reasonably safe and fit for travel; such an agency may be liable for injury or damages resulting from a defectively designed highway; defects in design or construction need not be flagrant or palpably dangerous under this standard (MCL 691.1402; MSA 3.996[102]).

8. HIGHWAYS — WARNING SIGNS.

The duty of a governmental agency having jurisdiction over a highway to make the highway reasonably safe for travel includes placing signs or other safeguards at points of special danger or giving other proper warning (MCL 691.1402; MSA 3.996[102]).

9. NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — RESCUES.

One who goes to the rescue of a person who is in imminent and serious peril caused by the negligence of another cannot be charged with contributory negligence, so long as the rescue attempt is not recklessly or rashly made; a person remains in the course of a rescue attempt where he acts under a reasonable belief that the endangered party's peril continues.

10. NEGLIGENCE — COMPARATIVE NEGLIGENCE — RESCUES.

Comparative negligence principles may be applied to rescue cases; where a plaintiff-rescuer suffers an injury during the scope of a rescue, the trier of fact must first inquire whether a reasonably prudent person would have acted as plaintiff did under the same or similar circumstances by balancing the utility of the plaintiff's conduct against the magnitude of the risk involved; the extent of risk which the plaintiff is justified in assuming under the circumstances increases in proportion to the imminence of the danger and the value to be realized from meeting the danger and attempting to remove or eliminate it.

11. NEGLIGENCE — COMPARATIVE NEGLIGENCE — RESCUES.

A plaintiff-rescuer who suffers an injury during the scope of a rescue should recover only the portion of the entire damages sustained by him as the defendant's negligence bears to the combined negligence of the plaintiff and the defendant where it is found that the plaintiff did not act reasonably in carrying out his mission.

12. COURTS — COURT OF CLAIMS — JUDGMENTS — INTEREST.

The statute allowing 5% interest on a judgment in a Court of Claims action is viable and not unconstitutional (MCL 600.6455; MSA 27A.6455).

13. STATE — ACTIONS — SURETY BONDS.

The State of Michigan is not required to post a bond in any suit or proceeding in which it is a party (MCL 600.2611, 600.2615; MSA 27A.2611, 27A.2615).

14. WITNESSES — EXPERT WITNESS FEES — DEPOSITIONS — COURT OF CLAIMS.

Expert witness fees may be taxed as costs in the Court of Claims; costs for depositions may not be taxed in the Court of Claims (MCL 600.6449[1]; MSA 27A.6449[1]).

*Ryan, Boerema, Jarosz & Kail* (by *Alexander S. Jarosz*), and *Cholette, Perkins & Buchanan* (by *Kenneth L. Block*), of counsel, for plaintiff.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, *Carl K. Carlsen*, Assistant Attorney General, and *James J. Kobza*, Special Assistant Attorney General, for defendant.

Before: CYNAR, P.J., and R. B. BURNS and R. L. TAHVONEN,* JJ.

CYNAR, P.J. Defendant appeals as of right from a determination of liability in this negligent highway design and maintenance case. Plaintiff has filed a cross-appeal claiming that the trial court erred in finding her 75% negligent, with a corresponding reduction in her award.

The subject highway is a portion of I-196 in Grand Rapids, Michigan, which leads into a lengthy (230 feet) overpass over Butterworth Street and a railroad track. The overpass is curved, and during a spell of inclement weather on

---

* Circuit judge, sitting on the Court of Appeals by assignment.

November 30, 1977, had become icy and treacherous.

Witness Betty Sall testified that it was overcast, damp and drizzling as she drove toward the overpass. She was traveling at approximately 50 miles per hour when she came upon the "glare ice" of the bridge. She fishtailed immediately, hitting and coming to a stop along the guardrail. Another motorist, James Lipski, stopped and asked Sall if she was all right. Plaintiff, Rosalyce Sweetman, then stopped her vehicle on the other side of the road. Sall did not recall seeing a sign that warned of ice on the bridge. The stretch of road preceding the bridge was not slippery.

James Lipski testified that it was misting at the time of the incident and that visibility was neither good nor was it "extremely bad".

Approaching the bridge, Lipski saw Sall's car. He slowed down, put on his flashers and stopped on the right side of the road. He noticed that it was slippery because his car skidded "a little bit" as he braked. Lipski asked a passing trucker to call the police. Plaintiff then pulled up. Lipski suggested to plaintiff that they walk up the road to warn oncoming traffic. Traffic was relatively light and precipitation was increasing. They were waving their hands as a group of four to five cars approached. One car lost control and slid towards them. It appeared that the car lost control about 150 yeards away from Lipski and plaintiff and that it was going about 35 miles per hour.

Witness Josephine Mackus was the driver of the car referred to by Lipski. She saw someone waving his or her arms as she approached the overpass. She applied her brakes but lost control of the car.

Lipski managed to avoid injury by leaping the guardrail, but plaintiff was not so fortunate. The

Mackus vehicle struck plaintiff, causing traumatic amputation of her left leg and a severe crushing injury to her right leg. A protracted course of treatment directed at saving plaintiff's right leg was unsuccessful, and it was amputated shortly after trial.

Plaintiff's complaint alleged that defendant was negligent through the improper design and construction of the highway and through ineffective maintenance. Following trial, the Court of Claims judge awarded plaintiff $250,000, representing $1,-000,000 in damages adjusted for plaintiff's own negligence. Defendant has appealed from the judgment as of right contesting the court's finding of negligence. Plaintiff filed a delayed cross-appeal challenging the finding of comparative negligence, the amount of interest awarded and the taxation of certain costs following an order of October 1, 1982, wherein this Court granted plaintiff's application for leave to file.

We first address defendant's contention that the trial court erred in finding that defendant failed to keep the overpass in a reasonably safe condition.

The trial judge's findings of fact in a bench trial will not be set aside unless clearly erroneous. *Phardel v Michigan,* 120 Mich App 806; 328 NW2d 108 (1982). Where a party claims that the evidence does not support the court's findings, the appellate court will not reverse unless, on the entire record, the appellate court is left with a definite and firm conviction that a mistake has been committed. *People v Starghill,* 99 Mich App 790; 298 NW2d 641 (1980). The credibility of witnesses is a question for the trier of fact, and in a bench trial special regard is given to the findings of the trial court. GCR 1963, 517.1; *Greenleaf v Dep't of State Highways & Transportation,* 90 Mich App 277; 282 NW2d 805 (1979).

In this case the court found: (1) that an inappropriate design of the overpass, combined with unfavorable weather conditions and the phenomenon known as preferential icing, made the bridge hazardous for drivers, (2) that the preferential icing phenomenon was well known to defendant, (3) that defendant had knowledge of the vulnerability of the Butterworth overpass to preferential icing, (4) that the placement of a warning sign 500 feet from the bridge did not constitute an adequate warning, and (5) that there was a breakdown in the road commission's policy and procedures for monitoring roads. In reviewing this issue we will separately consider plaintiff's principal allegations.

## A. DEFECTIVE DESIGN

MCL 691.1402 and 691.1403; MSA 3.996(102) and 3.996(103), which allow the present cause of action, provide in part:

"Sec. 2. Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. Any person sustaining bodily injury or damage to his property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him from such governmental agency. * * *

"Sec. 3. No governmental agency is liable for injuries or damages caused by defective highways unless the governmental agency knew, or in the exercise of reasonable diligence should have known, of the existence of the defect and had a reasonable time to repair the defect before the injury took place. Knowledge of the defect and time to repair the same shall be conclusively presumed when the defect existed so as to be readily

apparent to an ordinarily observant person for a period of 30 days or longer before the injury took place."

The mere presence of snow or ice on a public thoroughfare does not constitute negligence on the part of public authorities. *Hampton v Master Products, Inc,* 84 Mich App 767, 770; 270 NW2d 514 (1978). In *Greenleaf, supra,* this Court first considered the problem of preferential icing and held that it was a natural accumulation of ice for which liability did not inherently attach.

Liability, however, may attach where a highway is defectively designed, as defendant has a continuing duty to maintain the highway in a condition reasonably safe and fit for travel. *McKee v Dep't of Transportation,* 132 Mich App 714; 349 NW2d 798 (1984). Defects in design or construction, it has been held, need not be "flagrant" or "palpably dangerous" under this standard. *Arnold v Dep't of State Highways,* 406 Mich 235, 237-238; 277 NW2d 627 (1979).

In *Greenleaf* this Court said: "A way to construct or design bridges to eliminate the possibility of the occurrence of this type of icing has not yet been found." 90 Mich App 283. This may yet be true. However, we believe that the defendant's statutory duty includes the avoidance of overpass design and construction that significantly aggravates the problem. According to plaintiff's expert, the design of the Butterworth overpass and adjacent highway was defective for this very reason. Although defendant presented expert testimony to the effect that the highway was not defective, the deference given to the opinion of plaintiff's expert by the trial court is not cause to reverse.

Though plaintiff submitted evidence of defective design, she was also required to show defendant's

actual or constructive knowledge thereof. MCL 691.1403; MSA 3.996(103). She did show that defendant knew of prior accidents that had occurred under similar weather conditions. We find this evidence quite sufficient to demonstrate constructive notice of the defect complained of. See *Peters v Dep't of State Highways,* 400 Mich 50; 252 NW2d 799 (1977).

## B. INADEQUATE WARNING SIGN

The duty of a public agency to make its roads reasonably safe for travel includes placing signs or other safeguards at points of special danger or giving other proper warning. *Greenleaf, supra,* p 284. Defendant had placed a sign warning of the possibility of ice on the overpass. However, several witnesses testified that they could not remember seeing the sign as they approached the overpass. An Accident Bureau official testified that although the sign complied with the Michigan Manual of Uniform Traffic Control the value of the sign was eroded because it was posted year-round. The trial court found that the sign did not constitute an adequate warning. On the record, we do not find this conclusion to be clearly erroneous. Compare *Greenleaf, supra,* pp 284-285; *Salvati v Dep't of State Highways,* 92 Mich App 452; 285 NW2d 326 (1979), *lv den by equally divided Court* 415 Mich 708; 330 NW2d 64 (1982).

## C. ROAD PATROL

The trial court found that defendant failed timely to discover and alleviate and slippery condition on the Butterworth overpass at the time of the accident. Given the circumstances of this case, we perceive as unduly speculative the proposition

that a properly functioning patrol would have, or could have, observed and cured the icing condition before Betty Sall's car crossed the overpass. Although we find the court's finding on this theory of liability to be clearly erroneous, the error was harmless since the court's other findings were sufficient to support a finding of liability. Defendant's first allegation of error, that the court's finding of liability was erroneous, is rejected.

Defendant also complains that the court erred in taking judicial notice of a fact after the trial and without notice. However, this fact related only to plaintiff's road patrol theory, and any error in its consideration was harmless for the reason noted above.

At this point it is appropriate to discuss plaintiff's principal contention on cross-appeal, that the trial court's apportionment of 75% negligence to plaintiff was erroneous. Plaintiff first maintains that the comparative negligence doctrine does not apply to actions based on defective design, construction or maintenance of public highways.

Plaintiff relies on two products liability cases, *Ferdig v Melitta, Inc,* 115 Mich App 340; 320 NW2d 369 (1982), and *George v Eaton Corp,* 114 Mich App 580; 319 NW2d 366 (1982). These cases in turn had rested to a great extent on *Funk v General Motors Corp,* 392 Mich 91; 220 NW2d 641 (1974), and *Tulkku v Mackworth Rees Division of Avis Industries, Inc,* 406 Mich 615; 281 NW2d 291 (1979), which held that a plaintiff's recovery could not be defeated or reduced by his own negligence if the liability of the defendant arose from a failure to provide adequate safety devices in the work place. We note that *Tulkku* and *Funk* were effectively overruled in *Hardy v Monsanto Enviro-Chem Systems, Inc,* 414 Mich 29; 323 NW2d 270

(1982), a circumstance rendering the *Ferdig* and *George* decisions infirm. Note that this Court's determination in *George* was remanded for reconsideration in light of *Hardy, supra.* 418 Mich 853; 340 NW2d 289 (1983).

At any rate, this Court had previously refused to extend the *Funk* analysis to cases involving breach of the statutory duty to maintain highways in a reasonably safe condition. *Hall v Dep't of State Highways,* 109 Mich App 592; 311 NW2d 813 (1981), *lv den* 413 Mich 942 (1982); *Wade v State Highway Comm,* 92 Mich App 234; 284 NW2d 522 (1979), *lv den* 408 Mich 852 (1980).

Plaintiff next asserts that comparative negligence was improperly applied because she was engaged in a rescue. In *Parks v Starks,* 342 Mich 443, 449-450; 70 NW2d 805 (1955), the Court quoted with approval the following definition of the rescue doctrine, taken from 38 Am Jur, Negligence, § 228, p 912:

"The rule is well settled that one who sees a person in imminent and serious peril caused by the negligence of another cannot be charged with contributory negligence, as a matter of law, in risking his own life or serious injury in attempting to effect a rescue, provided the attempt is not recklessly or rashly made. In other words, in attempting to save the life of another, one is justified in exposing himself to danger in a manner that under other circumstances would deprive him of legal redress for injuries sustained."

The Am Jur language has continued to constitute the operative definition of the rescue doctrine in Michigan. See *Hughes v Polk,* 40 Mich App 634; 199 NW2d 224 (1972); SJI 13.07. Our question, one of first impression in this jurisdiction, is whether

comparative negligence principles apply to rescue cases.

When contributory negligence was the prevailing rule the rescue doctrine served a dual purpose: 1) it helped establish a causal connection between the defendant's negligence and the plaintiff's injury, and 2) it served to eliminate the absolute defense of contributory negligence. *Ryder Truck Rental, Inc v Korte,* 357 So 2d 228 (Fla App, 1978). The doctrine helps to establish proximate cause by providing that where a defendant has created a situation of peril for another the defendant is held to have caused the peril not only to the victim but also to his rescuer. *Ryder, supra.* This aspect of the rescue doctrine is wholly viable even in the wake of judicial abrogation of the contributory negligence defense. However, since allocation of negligence to the plaintiff under a system of comparative negligence is not a bar to the plaintiff's recovery, the second attribute of the rescue doctrine is no longer compelling. Stated alternatively, we perceive no harsh result from the application of comparative negligence principles to rescue cases.

Where a plaintiff suffers an injury during the scope of a rescue, the trier of fact must first inquire whether a reasonably prudent person would have acted as the plaintiff did under the same or similar circumstances. *Padilla v Hooks International, Inc,* 99 NM 121; 654 P2d 574 (1982); *Calvert v Ourum,* 40 Or App 511; 595 P2d 1264 (1979). In making this determination, the trier of fact must, as in all negligence cases, balance the utility of the actor's (in this instance rescuer's) conduct against the magnitude of the risk involved. *Moning v Alfono,* 400 Mich 425; 254 NW2d 759 (1977). In a rescue case, the extent of the risk which the volunteer is justified in assuming under

the circumstances increases in proportion to the imminence of the danger and the value to be realized from meeting the danger and attempting to remove of eliminate it. *Padilla, supra; Lave v Neumann,* 211 Neb 97; 317 NW2d 779 (1982).

If it is found that the rescuer did not act reasonably in carrying out his mission, *i.e.,* he was negligent, he should recover only the portion of the entire damages sustained by him as the defendant's negligence bears to the combined negligence of the plaintiff and the defendant. *Ryder Truck Rental, supra.*

In the instant case, the trial court made the following findings concerning the reasonableness of plaintiff's conduct:

"The court must examine plaintiff's conduct on November 30, 1977, at the time of the accident. The plaintiff had a duty to use ordinary care for her own safety. Her negligence, if any, will not act as a bar to recovery but will be reduced by her percentage of negligence. The plaintiff in an act of mercy stopped her vehicle on the Butterworth bridge overpass to give aid to Mrs. Sall as related above. Her action was reasonable and humanely responsive to an emergency situation. For this, she is not chargeable with negligence. *However, when this mission was completed she assumed upon herself the function of a traffic director on a highly iced and slippery bridge. Plaintiff could have returned to her Ford camper to a position of safety but chose not to.* Her assumption of directing traffic placed her in a position of danger and peril which she could have reasonably anticipated. Although not a pedestrian on the roadway she positioned herself outside and away from her own vehicle. The very act of directing traffic under such conditions then existing was a dangerous act even experienced by trained police officers. The giving of traffic signals to drivers under the conditions could and may have contributed to the driving response of Mrs. Mackus. The Court does find that plaintiff, Miss

Sweetman, was negligent and that her negligence was a proximate cause of her injuries. Her negligence is assessed at 75% under rules of comparative negligence in this state." (Emphasis added.)

We perceive that the trial court imposed an erroneous and unduly restrictive standard in defining the scope of plaintiff's rescue mission. In our view, a plaintiff remains in the course of a rescue attempt where the plaintiff acts under a reasonable belief that the endangered party's peril continues. *Marks v Wagner,* 52 Ohio App 2d 320; 370 NE2d 480 (1977). It is not unreasonable on this record that plaintiff, at the time she sustained her injuries, believed that Sall was vulnerable to being further injured by a sliding car and hence yet imperiled. Because the trial court made no findings in this respect, we vacate the court's determination that plaintiff was not engaged in a rescue at the time of her injury and remand for reconsideration of this issue in light of the foregoing discussion. If the court finds upon remand that plaintiff was within the scope of her rescue when injured, it shall proceed to make a redetermination of plaintiff's comparative negligence using the principles set forth *supra.*

The remaining issues in this case do not warrant extended discussion. The statute allowing 5% interest on a judgment in a Court of Claims action, MCL 600.6455; MSA 27A.6455, is viable and not unconstitutional. *Henley v Dep't of State Highways & Transportation,* 128 Mich App 214; 340 NW2d 72 (1983), *lv den* 418 Mich 965 (1984); *Curtin v Dep't of State Highways,* 127 Mich App 160; 339 NW2d 7 (1983).

The trial court did not err in denying plaintiff's motion seeking a writ of execution or in the alternative mandating that the state post bond. Pursu-

ant to MCL 600.2611 and 600.2615; MSA 27A.2611 and 27A.2615, the state is not required to post a bond.

The court did not err in refusing to tax costs for depositions, MCL 600.6449(1); MSA 27A.6449(1), but erred in refusing to permit taxation of costs for expert witness fees. Expert witness fees may be taxed as costs in the Court of Claims. *Brown v Dep't of State Highways,* 126 Mich App 392; 337 NW2d 76 (1983). Plaintiff's taxable costs are to be adjusted accordingly on remand.

Affirmed in part, reversed in part and remanded.

R. B. BURNS, J., concurred.

R. L. TAHVONEN, J. *(concurring in part and dissenting in part).* I respectfully dissent from my colleagues' remand of this case for reconsideration on the question of plaintiff's comparative negligence. Although I agree with the majority's analysis of the rescue doctrine in light of the adoption of comparative negligence, I believe the trial court has already expressly found that the activities of the plaintiff at the time this tragedy occurred were beyond the scope of the intended rescue effort. Moreover, I am persuaded that such a finding is not clearly erroneous and thus must be affirmed on appeal.

In all other respects, I concur with the majority.