SOLOMON v SHUELL

Docket No. 90688. Submitted August 5, 1987, at Detroit. Decided
    February 1, 1988. Leave to appeal applied for.

Charlotte Solomon, as personal representative of the estate of
    Joseph Solomon, deceased, brought a wrongful death action in
    Wayne Circuit Court against John Shuell, Michael Hall, Rich-
    ard Nixon and the Detroit Police Department. Plaintiff alleged
    that the decedent was shot to death by defendant Shuell while
    the decedent was attempting to rescue his son, Alvin Solomon,
    from the individual defendants, all of whom were Detroit police
    officers in civilian dress when they arrested Alvin Solomon in
    the course of an undercover operation. The trial court, Marvin
    R. Stempien, J., entered orders dismissing defendant Nixon
    from the suit and granting directed verdicts in favor of the
    police department and defendant Hall. A jury subsequently
    returned a verdict in favor of plaintiff and assessed damages in
    the amount of $100,000, but reduced the award to $20,000,
    finding that the decedent, who had appeared at the arrest scene
    with a gun in his hands, was eighty percent comparatively
    negligent. Plaintiff appealed, claiming, inter alia, that the trial
    court erred when instructing the jury on the rescue doctrine
    and in admitting certain police reports into evidence.

    The Court of Appeals held:

    1. A person who goes to the rescue of another whom he
    reasonably believes to be in peril caused by the negligence of a
    third person may maintain an action against the third person
    for injuries sustained in the scope of the rescue. In this case,
    the trial court erred in instructing the jury that the rescue
    doctrine applied only if it found that Alvin was in imminent

REFERENCES

Am Jur 2d, Appeal and Error §§ 810 et seq.
Am Jur 2d, Negligence §§ 227-229, 426 et seq.
Am Jur 2d, Trial §§ 623, 922.
Application of comparative negligence in action based on gross
    negligence, recklessness, or the like. 10 ALR4th 946, § 1.
Modern development of comparative negligence doctrine having
    applicability to negligence actions generally. 78 ALR3d 339.
Rescue doctrine: negligence and contributory negligence in suit by
    rescuer against rescued person. 4 ALR3d 558.

and serious peril since the relevant inquiry concerned the reasonable belief of the decedent as to Alvin Solomon's condition. Additionally, references to contributory negligence and a requirement that the rescue attempt not have been recklessly or rashly made were improper in light of the fact that comparative negligence, and not contributory negligence, is now the rule in Michigan. However, reversal is not required since the instructions when read as a whole fairly presented to the jury the theories of the parties and the applicable case law.

2. The trial court did not abuse its discretion in ruling that certain police reports indicating that the decedent had pointed a gun and fired a shot at defendant Shuell were admissible under the business records exception to the hearsay rule.

3. Defendant's other claims of error are without merit.

Affirmed.

SHEPHERD, P.J., dissented. Judge SHEPHERD would hold that the trial court erred in ruling that the challenged police reports were admissible under the business records exception to the hearsay rule in view of the reports' untrustworthiness when the motivation for misrepresentation by the police officers, who were faced with possible internal police department sanctions and probable litigation at the time the reports were made, and the inherent and excessive credibility of the reports in the juror's eyes are taken into account. Judge SHEPHERD would remand the case for a new trial.

1. NEGLIGENCE — RESCUES — COMPARATIVE NEGLIGENCE.

A person who goes to the rescue of another whom he reasonably believes to be in peril caused by the negligence of a third person may maintain an action against the third person for injuries sustained in the scope of the rescue; in such action, the trier of fact must first inquire whether a reasonably prudent person would have acted as the plaintiff did under the same or similar circumstances; if it is found that the plaintiff did not act reasonably in carrying out his mission, i.e., he was negligent, his damages should be reduced by the percentage of his negligence.

2. APPEAL — JURY INSTRUCTIONS.

The giving of an erroneous jury instruction requires reversal and vacation of the jury's verdict only where the error amounts to a defect in the trial such that the failure to set aside the verdict would be inconsistent with substantial justice.

3. APPEAL — JURY INSTRUCTIONS.

On appeal, jury instructions are read as a whole and reversal is

not required if the theories of the parties and the applicable law were fairly presented to the jury.

4. APPEAL — EVIDENCE.
    A trial court's ruling on the admissibility of evidence will not be reversed absent an abuse of discretion.

*Thurswell, Chayet & Weiner* (by *Harvey Chayet*), for plaintiff.

*Marion R. Jenkins,* for defendants.

Before: SHEPHERD, P.J., and HOOD and T. M. BURNS,* JJ.

HOOD, J. Plaintiff appeals as of right from a judgment entered pursuant to a jury verdict in which the jury found for the plaintiff and assessed damages at $100,000. The jury, however, found decedent eighty percent negligent and defendant John Shuell twenty percent negligent in the shooting death of decedent by Shuell, resulting in a total judgment for plaintiff in the amount of $20,000.

On March 20, 1981, officers Michael Hall, John Shuell, and Richard Nixon of the Detroit Police Department were watching a house on Curtis Street in Detroit. Persons in the home were suspects in two recent armed robberies. The officers were driving in unmarked police cars and were wearing plain clothes. The officers observed a Cutlass automobile arrive at the home, pick up two men, and leave. The driver was subsequently identified as Alvin Solomon, decedent's son. Nixon later saw the automobile stop at the home of Alvin and his family. A passenger, Wynee Green, was in the passenger seat. Nixon parked his car in front of Alvin, and Shuell pulled up behind Alvin. The

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

testimony at trial differed as to what happened next. Alvin testified that Nixon "rushed" him, and, without identifying himself as a police officer, threw him against the car and removed a BB gun from his waistband. Shuell then grabbed him by the neck, put a gun to his head, and dragged him towards the rear of the car. Shuell did not identify himself as a police officer. Alvin further testified that he yelled at Green to get his father, the decedent. Decedent came out of the house with a gun, pointing the gun at the ground. Before decedent got off the porch, Shuell started shooting at him and did not stop until decedent was hit.

Nixon testified that he did identify himself as a police officer. According to Nixon, decedent came out of the house with his gun in both hands and his arms extended in front of him. Nixon heard a shot and saw decedent's hands recoil as if he had fired the shot. He then heard several shots and saw decedent fall.

Shuell testified that he and Nixon did identify themselves as police officers. As he was patting Alvin down, he saw decedent running at him with a gun. Decedent stopped about fifteen feet away and assumed a two-handed combat stance. Shuell fired when he saw decedent pull the trigger. Decedent died at the scene.

Plaintiff, the personal representative of decedent's estate, brought this wrongful death action against the Detroit Police Department, Shuell, Hall, and Nixon. Nixon was voluntarily dismissed, and directed verdicts were granted in favor of the police department and Hall. The case against Shuell went to trial. Plaintiff alleged against Shuell negligence, assault and battery, and a violation of decedent's constitutional right to life. Following a fourteen-day jury trial, the jury was given a special verdict form. The jury found that

Shuell was negligent, and that Shuell's negligence was a proximate cause of decedent's death. The jury also found that decedent was negligent in his own death, and assessed decedent's negligence at eighty percent. The jury found Shuell did not commit an assault and battery upon decedent, and did not answer the question whether Shuell deprived decedent of life without due process. The jury found plaintiff's damages to be $100,000. A judgment for plaintiff in the amount of $20,000 was entered. Plaintiff appeals as of right.

On appeal, plaintiff first claims that the trial court's jury instruction on the rescue doctrine was erroneous. The trial court gave a modified version of SJI2d 13.07, the rescue doctrine instruction, which states:

> A person who goes to the rescue of another who is in imminent and serious peril caused by the negligence of someone else is not contributorily negligent, so long as the rescue attempt is not recklessly or rashly made.

The court instructed the jury as follows:

> If you find, under the facts, from the evidence, that Alvin Solomon was in imminent and serious peril, a person who goes to the rescue of another who is in imminent and serious peril caused by the negligence of someone else, is not contributorily negligent, so long as the rescue attempt is not recklessly or rashly made.

Plaintiff objected to this instruction, arguing that the rescue doctrine should apply not only if the victim actually was in peril, but even if the rescuer only reasonably believed the victim was in danger. The court disagreed with plaintiff's interpretation. Plaintiff states on appeal that, when

decedent came out of the house, decedent thought, due to the fact that Shuell and Nixon were in plain clothes and had unmarked cars, that Alvin was being assaulted by two thugs. Therefore, it was reasonable for decedent to come to Alvin's defense with a gun.

The rescue doctrine, first adopted in Michigan in *Brugh v Bigelow,* 310 Mich 74; 16 NW2d 668 (1944), provided that, where the plaintiff comes to the aid of another person who was put in danger by the defendant's negligence, the plaintiff could not be held contributorily negligent in an action by plaintiff against defendant for injuries suffered by the plaintiff in the rescue attempt. When contributory negligence was the prevailing rule, the rescue doctrine served a dual purpose: (1) it helped establish a causal connection between the defendant's negligence and the plaintiff's injury; and (2) it served to eliminate the absolute defense of contributory negligence. *Sweetman v State Highway Dep't,* 137 Mich App 14, 26; 357 NW2d 783 (1984). The Michigan cases applying the doctrine have all involved factual situations where the victim was in actual peril. See *Parks v Starks,* 342 Mich 443; 70 NW2d 805 (1955); *Brown v Ross,* 345 Mich 54; 75 NW2d 68 (1956); *Hughes v Polk,* 40 Mich App 634; 199 NW2d 224 (1972), lv den 388 Mich 770 (1972). In *Sweetman, supra,* this Court's most recent decision involving the doctrine, we held that, in light of the replacement of contributory negligence with comparative negligence,[1] the plaintiff's negligence in carrying out the rescue attempt will reduce his damages. *Sweetman, supra,* p 26. In *Sweetman,* the plaintiff went to the aid of a person whose car had slipped on an icy highway and hit a guardrail. The plaintiff then

[1] *Placek v Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979), reh den 406 Mich 1119 (1979).

stood farther up the road to warn oncoming motorists. An oncoming vehicle hit the plaintiff, and the plaintiff filed suit against the State Highway Department for negligent design of the road and improper maintenance. *Sweetman, supra,* pp 19-20. The trial court found that, while the plaintiff was not negligent in going to the victim's rescue, her subsequent act of assuming the function of a traffic director on an icy bridge after the victim was no longer in danger, instead of returning to the safety of her vehicle, was unreasonable. The court found the plaintiff seventy-five percent negligent and reduced her damages accordingly. *Id.,* pp 27-28. The plaintiff appealed, arguing that comparative negligence should not have applied because she was engaged in a rescue. *Id.,* p 25. We disagreed. We held that, where a plaintiff suffers an injury during the scope of a rescue, the trier of fact must first inquire whether a reasonably prudent person would have acted as the plaintiff did under the same or similar circumstances. If it is found that the rescuer did not act reasonably in carrying out his mission, i.e., he was negligent, his damages should be reduced by his percentage of negligence. *Id.,* pp 26-27. We also held that the trial court's definition of the scope of the plaintiff's rescue was unduly restrictive. We held that a plaintiff remains in the course of a rescue attempt where he or she acts under a reasonable belief that the endangered party's peril continues. *Id.,* p 28. Therefore, a plaintiff may receive the benefit of the rescue doctrine even after the victim is no longer in danger, if the plaintiff reasonably believed that the endangered party was still in peril. *Id.,* p 28. Thus, in *Sweetman,* we eliminated the requirement that the victim had to be in actual peril at the time of the plaintiff's rescue attempt.

Other states have held that the rescue doctrine

is applicable where, although there was not actually someone in danger, the plaintiff reasonably believed someone to be in danger. The cases do not require that there be someone who was at one time actually in danger, as was the situation in *Sweetman.* See *Eversole v Wabash R Co,* 249 Mo 523; 155 SW 419 (1913); *Wolfinger v Shaw,* 138 Neb 229; 292 NW 731 (1940); *Wolff v Light,* 169 NW2d 93 (ND, 1969); *Arnold v Northern State Power,* 209 Minn 551; 297 NW 182 (1941); *French v Chase,* 48 Wash 2d 825; 297 P2d 235 (1956). We believe that the rescue doctrine should protect not only those who come to the rescue of others in actual peril, but also those who reasonably believe that someone is in danger and take action to avert the danger. Public policy warrants that persons who risk danger to themselves to save others be rewarded, even if it turns out that no one was actually in danger. The emphasis should be on the reasonableness of the plaintiff's behavior. If the plaintiff reasonably believed another was in danger, the doctrine should apply. Then, if he or she acted reasonably in the rescue attempt, no reduction should be made in his damages. Indeed, this conclusion was foreshadowed in our opinion in *Sweetman.*

Thus, the instruction given by the court in the instant case was erroneous in two respects. First, the jury should not have been told that if it found from the evidence that Alvin was in imminent and serious peril, the doctrine applies. Alvin need not have actually been in peril; rather, the question is whether decedent reasonably believed Alvin was in danger. Second, the use of the term "contributorily negligent" coupled with a requirement that the rescue attempt not be "recklessly or rashly made" is misleading in light of the fact that comparative negligence, rather than contributory

negligence, is now the rule in Michigan. References to recklessness and rashness are unnecessary since a reasonably careful person would not act recklessly and rashly.

However, not all instructional error requires reversal. A jury verdict should be vacated only when the error amounts to a defect in the trial such that the failure to set aside the verdict would be inconsistent with substantial justice. *Johnson v Corbet,* 423 Mich 304, 326; 377 NW2d 713 (1985). Jury instructions must be read as a whole and reversal is not required if the theories of the parties and the applicable law were fairly presented to the jury. *Scalabrino v Grand Trunk W R Co,* 135 Mich App 758, 766; 356 NW2d 258 (1984), lv den 422 Mich 877 (1985). A reading of the jury instructions in their entirety in the instant case leads us to conclude that the error was harmless. The jury was instructed on comparative negligence and was told that plaintiff's damages were to be reduced by the amount which they found decedent to have been negligent. The jury found both decedent and Shuell to be negligent, with decedent eighty percent negligent. We believe that the jury's verdict would not have been different had a different instruction been given and that, on the whole, the theories of the parties and the applicable law were fairly presented to the jury. Thus, the error does not warrant reversal.

Next, plaintiff claims that certain police reports were not admissible under the business records exception to the hearsay rule, MRE 803(6). The reports stated that decedent came out of the house with his gun pointed at Shuell, shot at Shuell, and that Nixon told decedent they were police officers. Plaintiff claims these reports were inadmissible because they were inherently untrustworthy because they were made by the police officers in-

volved in the investigation who knew they faced possible civil and criminal liability. A trial court's ruling on the admissibility of evidence will not be reversed absent an abuse of discretion. *Hadley v Trio Tool Co,* 143 Mich App 319, 328; 372 NW2d 537 (1985). We find that the trial court did not abuse its discretion in admitting the reports. *People v Miller,* 88 Mich App 210, 224; 276 NW2d 558 (1979), rev'd on other grounds 411 Mich 321 (1981).

Plaintiff also claims that the trial court erred in admitting evidence that decedent's gun was unregistered. However, the transcript reveals that defendant's counsel merely asked decedent's spouse whether decedent's gun was registered, to which she replied: "I don't know." This did not prejudice plaintiff. Plaintiff also claims that the court erred in admitting evidence of an altercation involving decedent's family, in which Alvin and another family member were convicted of felonious assault. According to plaintiff, any probative value was severely outweighed by the prejudicial effect of suggesting that decedent's family was "at strife with itself," and that family members were criminals. Plaintiff did not object to this evidence; therefore, we do not reach the issue. *Bajis v Dearborn,* 151 Mich App 533, 536; 391 NW2d 401 (1986), lv den 426 Mich 874 (1986). Even if this issue was properly preserved, we find no abuse of discretion in the trial court's decision to admit the evidence for impeachment.

Affirmed.

T. M. BURNS, J., concurred.

SHEPHERD, P.J. *(dissenting).* I respectfully dissent. The majority decides that the police reports made by certain of the individual defendants, which essentially corroborate their versions of the

facts, were admissible under MRE 803(6), the business records exception to the hearsay rule. The majority rules that the trial court "did not abuse its discretion in admitting the reports."

MRE 802 prohibits hearsay except as provided under the evidentiary rules. MCR 2.613(A) provides "an error in the admission . . . of evidence . . . is not grounds for . . . disturbing a judgment or order unless refusal to take this action appears to the court inconsistent with substantial justice." This is in accord with the general rule. 5A CJS, Appeal & Error, § 1727, p 999 (error committed in admitting hearsay evidence may or may not be grounds for reversal, depending upon whether such error is prejudicial).

MRE 803(6) provides:

> (6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, transactions, occurrences, or events, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, *unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.* The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit. [Emphasis added.]

Police reports have been rejected under the hearsay exception for several reasons, including: (1) inclusion of police officer's factual conclusions although he was not an eye witness, *Derrick v Blazers,* 355 Mich 176, 180-181; 93 NW2d 909

(1959); (2) declarants were not acting in the regular course of *their* business when making the statement, *Hewitt v Grand Trunk W R Co,* 123 Mich App 309, 322-325; 333 NW2d 264 (1983); and (3) untrustworthiness, specifically, the motive of the declarant, *Central Fabricators, Inc v Big Dutchman Div of US Industries, Inc,* 398 Mich 352, 354-355; 247 NW2d 804 (1976). The federal advisory committee note on this exception under the federal rules of evidence, FRE 803(a) states:

> Problems of the motivation of the informant have been a source of difficulty and disagreement. In *Palmer v Hoffman,* 318 US 109, 63 S Ct 477, 87 L Ed 645 (1943), exclusion of an accident report made by the since deceased engineer, offered by defendant railroad trustees in a grade crossing collision case, was upheld. The report was not "in the regular course of business," not a record of the systematic conduct of the business as a business, said the Court. The report was prepared for use in litigating, not railroading. While the opinion mentions the motivation of the engineer only obliquely, the emphasis on records of routine operations is significant only by virtue of impact on motivation to be accurate. Absence of routineness raises lack of motivation to be accurate. The opinion of the Court of Appeals had gone beyond mere lack of motive to be accurate: the engineer's statement was "dripping with motivations to misrepresent." *Hoffman v Palmer,* 129 F 2d 976, 991 (CA 2, 1942).

Our Supreme Court has said:

> The police report is a writing. It could be admitted into evidence as an exhibit if the proponent can show that it meets the requirements of the business records exception. However, because of the "nature" of police business and the circumstances under which such reports are usually

made, the possibility of police reports so qualifying is unlikely. [*Moncrief v Detroit,* 398 Mich 181, 189; 247 NW2d 783 (1976) (citing *Palmer*).]

In the instant case, the motivation to misrepresent is obvious. Faced with possible internal police department sanctions and facing probable litigation even the most honest and self-effacing officer might be inclined to place his actions in the best possible light. The reports, given their imprimatur as official police documents, might be viewed as more credible than the testimony of live witnesses. It is impossible to conclude that the jury, faced with a quasi-official document which purports to offer an objective recitation of the "facts," would not place heavy reliance on its accuracy. I would conclude the reports fail a reasonable MRE 803(6) analysis and therefore should have been excluded because of the serious problem of trustworthiness. MRE 802. Nor do I believe the error harmless. MCR 2.613(A).

By comparison, I note a federal case, *Wilson v Beebe,* 743 F2d 342 (CA 6, 1984), aff'd on reh en banc 770 F2d 578 (CA 6, 1985), on FRE 803(8), the federal business records hearsay exception. In that case, the defendant, a state trooper, shot the plaintiff while attempting to handcuff him during an arrest. Plaintiff brought a negligence and civil rights action. At trial, plaintiff sought to admit a memorandum written by the defendant's superior in which the superior concluded that defendant had acted contrary to department training in weapons use and handling. The district court admitted the memorandum. In affirming, the Sixth Circuit concluded that all the relevant factors indicated that the memorandum was accurate. The Sixth Circuit indicated that the memorandum was free from motivational problems which might de-

tract from its trustworthiness. I note in the *Wilson* case that the police memorandum is against the interest of the police officer.

The reports in the instant case present serious motivational problems. Because they are official police documents I believe the reports have inherent and excessive credibility in the jurors' eyes. Therefore, I believe the admission of these reports was error and was not harmless. I would remand the case for a new trial.